# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

14500 LIMITED, an Ohio Limited
Liability Company

        Plaintiff,

                                Case No. 1:12-cv-01810

v.                               Judge Christopher A. Boyko

CSX TRANSPORTATION, Inc., a
Virginia Corporation.

        Defendant,

_____

## MOTION TO REMAND

        Now comes the Plaintiff, by and through the undersigned counsel, and does respectfully

pray this Court to remand this matter back to the Cuyahoga County Court of Common Pleas.

Contrary to the assertions of the Defendant, removal is neither required nor proper under 28

U.S.C. sections 1331 through 1446.  Federal law does not preempt this simple state law property

claim.  Furthermore, and alternately, the amount in controversy does not exceed $75,000.00.

The reasons for remand are more fully set forth in the hereto attached and incorporated brief.

                                 Respectfully submitted,

                                 David J. Horvath (0055989)
                                 Attorney for Plaintiff
                                 7100 E Pleasant Valley #110
                                 Independence, OH  44131
                                 216-986-0860
                                 djhorvath@hotmail.com

## **SERVICE**

The undersigned hereby certifies the Robert E. Haffke, 9010 Lakeside Ave., Cleveland, Ohio 44114 and R. Eric Bilik, 50 N. Laura Street, Suite 330, Jacksonville, Florida 33202 was served by way of Ordinary Mail this 25th day of July, 2012.

David K. Horvath

## **INTRODUCTION**

This matter was originally brought in state court on an adverse possession claim. Pursuant to the affidavit of Neil F. Gloger, attached hereto as Exhibit A, this action became necessary due to a property dispute between the parties.[1] The Plaintiff purchased land believing certain boundaries existed. Those boundaries are in dispute pursuant to descriptions established by way of a survey. Despite exclusive use and possession of the land by Plaintiff and Plaintiff's predecessors in ownership, title to this tiny piece of land apparently lies with Defendant CSX. CSX admitted it did not need the land and had no use for the land. The parties entered into some negotiations to purchase the land. Plaintiff believed there were economic benefits to this course of action.

Plaintiff instituted litigation as the parties could not agree on a reasonable purchase price or the conditions of sale. The Defendant suggested the value of the land was somewhere in the $20,000.00 to $28,000.00 range. This is verified by way of Exhibit B, an email from the Defendant's sales associate in Jacksonville Florida. Plaintiff felt this number was excessive given the amount of land in question and decided to pursue legal remedies by way of an adverse possession action, feeling there were economies in that course of action.

At no time has Plaintiff attempted to regulate, control, effect, or in any way regulate the operations of CSX. In fact, this land in question has been irrelevant to the operations of Defendant for decades. The state court action had and this action continues to have no affect on the operations of CSX nor can Plaintiff's actions be deemed an attempt to control the economic operations of CSX. Thus this matter should be remanded per the arguments below.

---

[1] Please see Affidavit of Gloger for factual references in this section.

## LAW AND ARGUMENT

The Defendant believes that the ICCTA clearly preempts the state law claims of Plaintiff. At paragraph 11 of its Notice, Defendant States that the ICCTA "expressly and categorically preempts state law regulation of rail transportation". What the Defendant fails to appreciate or admit is that Plaintiff is not in any way attempting to regulate rail transportation or otherwise take advantage of any state law which purports to regulate rail transportation. In fact, Defendant's own case law suggests that the Defendant's arguments are not only an improper extension of case law, but that this case should be remanded. Attached hereto for the Court's review is the entire of the Fifth Circuit's opinion in *Elam vs. Kansas City Southern Railway Company 635F. 3d 796 (5th Cir.2011).*

The Elam court went to great lengths to discuss subject matter jurisdiction and the establishment of same by way of the ICCTA. In its well reasoned opinion the Fifth Circuit addresses the principles of federal preemption as follows:

"A Plaintiff is the master of his complaint and may allege only state law, even when federal remedies might also exist. *Bernhard vs. Whitney Nat'l bank, 523 F.3d 546 (5th Cir.2008).* Under the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of Plaintiff's well pleaded complaint. *Id.* Accordingly, there is no federal question jurisdiction if the Plaintiff properly pleads only a state law clause of action" *Gutierrez vs. Flores, 543 F. 3d 248 (5th Cir. 2008).* Furthermore, that federal law might provide a defense to a state law

cause of action does not create federal question jurisdiction. *Merrell Dow Pharm. Inc. vs. Thompson 478 U.S. 804(1986).*[2]

An exception to the well-pleaded complaint rule arises when Congress so **completely preempts** a particular area that any civil complaint raising this select group of claims is **necessarily federal in character**. *Gutierrez 543 F. 3d at 252.* (Emphasis added). Under the complete preemption doctrine,[3] what otherwise appears as merely a state law claim is converted to a claim arising under federal law for jurisdictional purposes because the federal statue so forcibly and completely displaces state law that the Plaintiff's cause of action is either wholly federal or nothing at all. *New Orleans &Gulf Coast ry. Co vs. Barrois, 533 F. 3d 321 (5ᵗʰ Cir. 2008).* The question in complete preemption analysis is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law. *Barrois 533 F. 3d 331.* In determining Congress' intent, Congress may do so either expressly through the statues plain language or impliedly through its structure and purpose. *Altria Group, Inc. vs. Good, 555 U.S. 270 (2008).* Regardless of how Congress indicates its intent, we begin with the assumption that the historic police powers of the state are not to be superseded by the Federal act unless there was a clear and manifest purpose of Congress to do so. *Id.*

The Elam court then goes on to discuss the Plaintiff's state law claims of negligence and negligence per se. Within this opinion it is established that the **state statute** which clearly

---

[2] In this instance the Defendant suggests preemption as a defense to the Plaintiff's claims. Assumedly the Defendant will move this Court to dismiss this claim should this Court find subject matter exists. Therefore, Defendant is guilty of attempting to create jurisdiction for the sole purpose of creating a defense.

[3] As opposed to "defensive preemption" which does **not create** federal jurisdiction but only declares the supremacy of federal law over state law. *Barrios 533 F. 3d at 331.* Complete preemption is an extraordinary measure and is a very narrow exception to the well-pleaded complaint rule. *Id.*

attempts to regulate the economic operations of the railroad, and which is the basis of the negligence per se claim, were preempted by the ICCTA. The Elam court went to great lengths to discuss the word "regulation" determining that it applies only to statues or laws that have the effect of managing or governing rail transportation. *Elam at 805*. The Elam court found that the ICCTA does not preempt generally applicable state laws that have only a remote or incidental effect on rail transportation. *Id*. Therefore, if the state law is not expressly preempted by the ICCTA it will only be preempted if the effect of that law has an unreasonable burden or interference with rail transportation. *Id*.

The opinion focuses on the realities of regulation. The core element of the ICCTA was economic regulation. *Id at 806*. In finding the state statue had an immediate and significant impact on economic regulation, the Elam court therefore found the negligence **per se** claim to be preempted by the ICCTA. However, the Elam court determined with specificity that the state law tort claim for ordinary negligence was **not preempted by the statue**. Finding that the state law negligence claim does not "manage or govern rail transportation", the Elam court found that the state law did not "fall squarely under" section 10501(b) because it did not attempt to manage or govern railroad transportation. *Id.at 806 to 807*. The Elam court made it clear, that in reading the historical case law pertaining to section 10501(b), that Congress only intended to completely preempt state laws and remedies when they are a direct attempt to manage or govern a railroad's decisions **in the economic realm**. *Id. at 807*. (Emphasis) The Elam court then went on to discuss the Plaintiff's state court negligence claim, and how it did not affect the railroad's economic operations. In doing so there is language within the opinion that is of particular import sub judice.

At page 813, Elam court is quoted as saying "*like state property laws and rules of civil procedure that generally have nothing to do with railroad crossings, the effects of state negligence laws on rail operations are merely incidental.*" *Id at 813 (citing Franks 593 F 3d at 411).* (Emphasis added). In finding that the ICCTA did not expressly or completely preempt the Elam's simple negligence claim, the Fifth Circuit discussed whether or not the negligence claim could have the effect of unreasonably burdening or interfering with the railroad's operation. In this instance the Elam court found that there was no significance to the Defendant's affidavits pertaining to economic impact, and determined that the negligence action did not unreasonably burden or interfere with the railroads economic operation. The court found that the action would simply have no effect on switching, train length, or crew operations. It was determined that the Defendant had not met its burden of showing that the simple negligence claim is preempted.

In this case we can point to this language and determine that the adverse possession claim, which in and of its self affects a parcel of land valued at less than $30,000.00, does not in any way unreasonably burden or interfere with CSX's operations. More specifically, and in reference to the above quoted language, state property laws generally have nothing to do with railroad crossings or operations, and the effects of state property laws are "merely incidental". In the case of judice we are dealing with nothing but that: state property laws. Enforcing such laws is not significant enough to fall under the purview of complete preemption.

It is a long stretch to determine that an adverse possession claim somehow attempts to regulate operations of CSX. Notwithstanding, the Defendant attempts to engage in semantic arguments using definitions contained within the Act. As forth in paragraph 10 of its Notice, the Defendant correctly states that the ICCTA defines "transportation" to include a warehouse, wharf, doc, **yard, property** or other facility...of any kind related to the movement of passengers

or property or both..." 49 U.S.C. Section 10102(9)(a). It is curious that the Defendant bold-faces the words "property" and "yard" but glosses over the operative part of the definition: "related to the movement of passengers or property or both..." What the Defendant suggests is that the Court make a determination that transportation means "property" or "yard" and not the use of either in the "movement of passengers". This is nonsensical.

In this instance the land in question is not being used or is any way related to the movement of passengers or property. CSX has failed to make so much as one factual assertion to that point. That is because this is a dormant piece of land, behind a fence that has precluded CSX employees from entering onto it for decades. This is certainly not the type of situation Congress intended to preempt by enacting the ICCTA.

The Plaintiff is not attempting to utilize any state statue which in any way attempts to regulate the operations of the railroad. Rather the Plaintiff is merely using state common law to determine ownership of property which has been used exclusively by Plaintiff and its predecessors in privety for decades. The Defendant knows this and has been careful not to mention the lack of use in its arguments for preemption. At no time does the Defendant suggest that this land is being used for transportation as defined by the act. Nor has Defendant alleged in any way that the exercise of jurisdiction by the state courts would in any way effect its usage of its rails, or otherwise regulate the usage of its. The argument that the Defendant may someday determine that this property is useful, or could possibly be incorporated into existing operations, is insufficient to create jurisdiction under the ICCTA. Again, the Plaintiff is not attempting to "directly manage or govern a railroad's decisions in the economic realm". *PCI Trans. vs. Fort Worth & W.R.R. Co. 418 F. 3d 535 (5th Cir. 2005)(as quoted by Defendant).*

Likewise, the Defendant's attempts to establish jurisdiction under 28 U.S.C. Secs. 1441 and 1332 are also fatal. Although the Defendant has "stated the value" of this case to be in excess of $75,000.00, Defendant is dishonest in doing so. Attached as Exhibit B is an email from a CSX sales associate: Mr. Matt Coughing. Within this email he clearly establishes to Mr. Neil Glogger, an officer with 14500 Limited, that the value of the property is, at best, $28,000.00. For the Defendants to support an argument to the contrary is disingenuous and misleading.

Generally, conclusory allegations of an amount in controversy exceeding $75,000.00 are insufficient to carry the Defendants burden and the Defendant must establish the amount in controversy by a preponderance of the evidence. *McPhail v. Deer $ Co.,* 529 F. 3d 947 (10[th] Cir. 2008). Defendant has not done so. Rather the Defendant perfunctorily state that is may determine the amount. Specifically, Defendant claims that since non-monetary relief is sought, the Defendant may, by way of the removal notice, state the amount on controversy. This is simply a fallacy. So are the nebulous and self serving recitations of significant impact etc. In short, the Defendant has failed to carry its burden. The Defendant must provide specific facts in the notice to demonstrate the Plaintiff's damages exceed $75,000.00. *Coca cola Bottling of Emporia v. S Beach Beverages Co.* 98 F. Supp 2d 1112 (D Kan. 2002).

There is simply no basis for diversity jurisdiction in this matter. The Defendant clearly admits this is not a case or controversy in access of $75,000.00. Therefore, any attempt to move this matter to a federal court based upon same should be denied. This case is proper for remand on these factual defects as well.

## CONCLUSION

There is a presumption against removal jurisdiction. *Laughlin v. Kmart Corp.,* 50 F. 3d 871 (10th Cir. 1995). Statutes conferring jurisdiction are to be narrowly construed in light of the federal courts' limited role a tribunals. *Pritchett v. Office Depot, Inc.,* 420 F. 3d. 1090 (10th Cir. 2005). All doubts should be resolved against removal. *Fajen v. Found. Res. Ins. Co., 683 F. 2d 331 (*10th Cir. 1982). The removing party bears the burden of clearly establishing the requirements of federal jurisdiction. *Martin v. Franklin Capital Corp.* 251 F. 3d 1284 (10th Cir. 2001). Given these standards, remand is warranted.

There is simply no federal question on the face of Plaintiff's Complaint, nor is this action "necessarily federal in character". There is no question that Congress did not intend to preempt or "displace" state law adverse possession claims as a matter of course or policy. That the Act might provide a defense does not itself create jurisdiction. Furthermore, the Defendant has failed to demonstrate that a simple adverse possession action, over less than a quarter acre of land, is a direct attempt to economically regulate a railroad. Without an affirmative demonstration that the statute applies, that there is a significant impact on CSX's operation, that Congress intended to preempt this action, or that the amount in controversy exceeds $75,000.00, all doubts should be resolved in favor of the Plaintiff and this matter should be remanded to the State Court.

Respectfully submitted,

David J. Horvath

# EXHIBIT A

STATE OF OHIO              )         AFFIDAVIT OF
                             )  SS:  NEIL GLOGER
COUNTY OF CUYAHOGA    )

I Neil Gloger being first duly sworn and cautioned according to law, do hereby depose state,

allege, aver as enumerated hereunder:

1. That I am Managing Partner for 14500 Limited, an Ohio Limited Liability Company, the Plaintiff in the instant litigation.

2. That Plaintiff owns certain property which abuts property owned by CSX Transportation.

3. That I made due and diligent inquiry as to the ownership and use of this land prior to purchasing said land for the company.

4. That I was assured by the previous owner that no one else had used this particular piece of land for decades. This includes the Defendant CSX Transportation.

5. That at the end boundaries of the parcel of land that we are trying to take by adverse possession is a fence which has precluded anyone from CSX from entering on to the property from their adjacent property.

6. That at all times all parties assumed that this particular piece of land was indeed owned by the previous owners and not CSX Transportation.

7. In its current state the land is not usable for CSX nor can it conceivably be used for them in any future railroad endeavors. There is no evidence of tracks ever being on this property nor is there any indication that this property was ever intended to be used for railroad transportation purposes.

8. Furthermore, I entered into negotiations with CSX for the purchase of adjacent land. **They represented this value at $20,000.00-$28,000.00 of this land in question.**

9. I understand that CSX is now representing to this court that the value of this land is in excess of $75,000.00. This is simply false. It was their valuation of the land that caused me to consider legal options for obtaining this land including this lawsuit. Again, this land was valued by them at only $20,000.00-$28,000.00. Stating otherwise is nothing more than an argument of convenience to improperly force this matter into Federal Court.

10. I am in no way attempting to regulate or otherwise affect the affairs of the Defendant.

11. In no way will the change of ownership in this land affect the operations of CSX Transportation currently or in the future.

12. The ownership of this land is necessary to the continued operation and profitability of my business and the worth of the land in general. It is worthless to CSX.

13. Representatives from CSX had expressed to me they have no plans now or in the future for the use of this land.

14. Again, my company is in no way trying to interfere with the operations of CSX. Ownership of this land is irrelevant to the continued operations of CSX.


FURTHER AFFIANT SAYETH NAUGHT

Neil Gloger


On July___, 2012 Neil Gloger appeared before me and personally subscribed that the above is his signature and did attest that this affidavit was his free act and deed.

Notary Public

Kevin R. Collins
Notary Public
State of Ohio
My Comm. Exp.
Feb. 23, 2014

# EXHIBIT B

Forwarded Message Attachment--
From: Matthew_Coffing@csx.com
To: n.gloger@intergroupinternational.com
Subject: Collinwood Yard Encroachment
Date: Tue, 20 Mar 2012 17:24:10 +0000

Neil,

After thoroughly vetting our position in a coordinated effort between CSX Real Property, our legal team, and our field operations team we have finally been able to determine the options for the unauthorized encroachment on property owned by CSX and our predecessor companies since June 24, 1873 at Collinwood Yard, from our perspective.

As you know, we have made a concerted effort to reach out to field operations in an attempt to reach both your and our ideal goal. That goal, being to serve your shipping needs via rail service to the rear of your facility at 14500 Darley Avenue. After discovering that the track nearest your facility is controlled by TRANSFLO, a subsidiary company of CSX, we reached out to them to determine if we could serve you on the track in question through their operations. And, after further investigation, what you would propose to do does not align with the current needs for TRANSFLO with regard to that track. As a result of this development, we have determined that the track located directly South of your facility cannot be used to service your needs.

That said, TRANSFLO has informed me that we can serve you via truck, though I know you were formerly opposed to this option. If you have a change of heart, please feel free to reach out to Jeanne Koopman of TRANSFLO, with whom you have previously spoken regarding this matter. If you were not able to take down her contact information, I will be glad to put you in touch with her.

Further, we have determined the property has a somewhat significant market value of somewhere in the $20,000 - $28,000 range. What I would like to propose to you is an solution that could still potentially save you a significant amount of money on legal bills and still satisfy your company's needs to occupy the property. This solution would be a lease of the property for $1,800/year. Please let me know if this is an agreeable solution and I will send the matter to our Manager of Leasing who can help you execute a land-lease agreement.

Best Regards,

Matt Coffing
*Sales Associate*
CSX Real Property
6737 Southpoint Drive South, Suite100
Jacksonville, Florida 32216
904-279-4837 (Direct Line)
904-245-3850 (Fax)

# ELAM v. KANSAS CITY

# SOUTHERN RR Co.

635 F.3d 796 (5th Cir. 2011), 10-60227, Elam v. Kansas City Southern Ry. Co.

Page 796

**635 F.3d 796 (5th Cir. 2011)**

**Barbara ELAM; Bobby Elam, Plaintiffs-Appellants,**

v.

**The KANSAS CITY SOUTHERN RAILWAY COMPANY; Ronald L. Michael, Defendants-Appellees.**

**No. 10-60227.**

**United States Court of Appeals, Fifth Circuit.**

**March 15, 2011**

Page 797

[Copyrighted Material Omitted]

Page 798

[Copyrighted Material Omitted]

Page 799

[Copyrighted Material Omitted]

Page 800

[Copyrighted Material Omitted]

Page 801

Duncan Lee Lott, Casey Langston Lott (argued), Langston & Lott, P.A., Booneville, MS, for Plaintiffs-Appellants.

Charles Edwin Ross (argued), William B. Lovett, Jr., Wise Carter Child & Caraway, P.A., Jackson, MS, for Defendants-Appellees.

Jaffrey Robert White, Center of Constitutional Lit., P.C., Washington, DC, for Amicus Curiae.

Appeal from the United States District Court for the Northern District of Mississippi.

Before DAVIS, WIENER, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Plaintiff-Appellant Barbara Elam allegedly suffered injuries when she drove her automobile into the side of a train. Elam and her husband brought this state law tort action against the train's owner and its engineer in Mississippi state court. The Elams claim the defendants were negligent per se in violating Mississippi's antiblocking statute, which purports to regulate the amount of time a train may occupy a crossing. The Elams also claim the defendants negligently failed to maintain adequate warnings of the train's presence at the crossing. The case was removed to federal district court. The district court held the Interstate Commerce Commission Termination Act (ICCTA) completely preempted the Elams' negligence per se claim and preempted their simple negligence claim. We hold the ICCTA completely preempts the Elams' negligence per se claim but does not preempt their simple negligence claim.

## I. BACKGROUND

On November 18, 2006, plaintiff Barbara Elam drove her automobile into the side of a train owned by defendant Kansas City Southern Railway Company (KCSR) and operated by defendant Ronald L. Michael, the train's engineer (together KCSR, unless otherwise indicated). The train was performing switching operations at the Pine Crest Road crossing in Corinth, Mississippi, and was stopped at the time of the accident. Elam allegedly suffered injuries, and she and her husband, Bobby Elam, brought this state law tort action against

Page 802

KCSR in Mississippi state court. The Elams assert KCSR was negligent per se in violating Mississippi's antiblocking statute, Mississippi Code 77-9-235, which limits the amount of time a train may occupy a road crossing. The Elams also assert KCSR negligently failed to provide adequate warnings of the train's presence at the crossing.[1] The Elams seek actual and punitive damages.

KCSR removed this action to the Northern District of Mississippi. Although both Michael and the Elams are residents of Mississippi, KCSR invoked the district court's diversity jurisdiction on the ground that Michael was not a proper party. KCSR also invoked federal question jurisdiction on the ground that the ICCTA completely preempted the Elams' state law claims.

The Elams moved to remand for lack of subject matter jurisdiction. The district court found it lacked diversity jurisdiction, but nonetheless exercised removal jurisdiction on the ground that the

ICCTA completely preempted the Elams' claims. The Elams moved for clarification as to whether the ICCTA preempted all their claims or only their negligence per se claim. The district court issued a second order specifying that the ICCTA expressly and completely preempted the Elams' negligence per se claim and impliedly preempted their simple negligence claim. The district court then sua sponte dismissed the action without prejudice so it could be refiled with the Surface Transportation Board, the federal agency that implements the ICCTA. The Elams appealed.

## II. STANDARDS

Federal subject matter jurisdiction is limited and must be conferred by Congress within the bounds of the Constitution. *See, e.g.,* U.S. CONST. art. III, 2; *Cary v. Curtis,* 44 U.S. 236, 245, 3 How. 236, 11 L.Ed. 576 (1845); *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 176, 179, 2 L.Ed. 60 (1803). Litigants cannot bestow subject matter jurisdiction on federal courts by waiver or consent. *See, e.g., Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934). We may examine the district court's subject matter jurisdiction, sua sponte if necessary. *See, e.g., United States v. Corrick,* 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263 (1936); *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Legal questions concerning federal jurisdiction are reviewed de novo. *Ramirez-Molina v. Ziglar,* 436 F.3d 508, 513 (5th Cir.2006).

The preemptive effect of a federal statute is a question of law we review de novo. *Franks Inv. Co. LLC v. Union Pacific R.R. Co.,* 593 F.3d 404, 407 (5th Cir.2010) (en banc); *Friberg v. Kan. City S. Ry. Co.,* 267 F.3d 439, 442 (5th Cir.2001). The party asserting federal preemption has the burden of persuasion. *AT& T Corp. v. Pub. Util. Comm'n of Tex.,* 373 F.3d 641, 645 (5th Cir.2004) (citing *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 255, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984)).

## III. DISCUSSION

We hold the district court had removal jurisdiction over this action because the ICCTA completely preempts the Elams' negligence per se claim. We next hold the ICCTA does not preempt the Elams' simple negligence claim, at least on the current record.

Page 803

### A. Federal jurisdiction and the Elams' negligence per se claim

A federal district court has removal jurisdiction over an action if the district court could have exercised original jurisdiction over it. 28 U.S. C. 1441(a). We hold the district court could have exercised original federal question (and supplemental) jurisdiction over this action because the ICCTA completely preempts the Elams' negligence per se claim.

### 1. *Principles of federal preemption*

A plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist. *Bernhard v. Whitney Nat'l Bank,* 523 F.3d 546, 551 (5th Cir.2008). Under the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint. *Id.* Accordingly, " there is no federal [question] jurisdiction if the plaintiff properly pleads only a state law cause of action." *Gutierrez v. Flores,* 543 F.3d 248, 252 (5th Cir.2008) (quoting *Bernhard,* 523 F.3d at 551). That federal law might provide a defense to a state law cause of action does not create federal question jurisdiction. *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

An exception to the well-pleaded complaint rule arises when Congress " so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Gutierrez,* 543 F.3d at 252 (quoting *Johnson v. Baylor Univ.,* 214 F.3d 630, 632 (5th Cir.2000)). Under the " complete preemption" doctrine, " what otherwise appears as merely a state law claim is converted to a claim ' arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all." *New Orleans & Gulf Coast Ry. Co. v. Barrois,* 533 F.3d 321, 330 (5th Cir.2008) (internal quotation marks and brackets omitted); *see also Franks,* 593 F.3d at 407. " The question in complete preemption analysis is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law." *Barrois,* 533 F.3d at 331; *see also Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

Complete preemption must be distinguished from " defensive preemption" (i.e., " conflict preemption" or " ordinary preemption" ). *Barrois,* 533 F.3d at 331. Defensive preemption does not create federal jurisdiction and simply " declares the primacy of federal law, regardless of the forum or the claim." *Id.* " As a general matter, complete preemption is less common and more extraordinary than defensive or ordinary preemption." *Id.* Indeed, complete preemption is a " narrow" exception to the well-pleaded complaint rule. *Beneficial,* 539 U.S. at 5, 123 S.Ct. 2058.

In determining the nature and reach of federal preemption, Congress's intent is the " ultimate touchstone." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Congress can indicate its preemptive intent either expressly through a statute's plain language, or impliedly through a statute's " structure and purpose." *Altria Group, Inc. v. Good,* 555 U.S. 70, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008). Regardless of how Congress indicates its intent, we begin " with the assumption that the historic police powers of the States are not to be

Page 804

superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (internal quotation marks and citation omitted); *Franks,* 593 F.3d at 407. This assumption applies with " particular force" when Congress legislates in a field traditionally occupied by state law.

*Altria,* 129 S.Ct. at 543. On the other hand, the assumption applies with less force when Congress legislates in a field with " a history of significant federal presence." *United States v. Locke,* 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). " Historically, federal regulation of railroads has been extensive...." *Fayard v. Ne. Vehicle Servs., LLC,* 533 F.3d 42, 46 (1st Cir.2008).

The Elams' well-pleaded complaint asserts only state law claims of negligence and negligence per se. Ordinarily, these state law claims would not support original federal question jurisdiction. The issue is whether any of these claims is completely preempted by federal law.

2. *The state and federal statutes at issue*

The Elams assert KCSR was negligent per se in violating Mississippi's antiblocking statute.[2] The Elams specifically allege KCSR " failed to uncouple its cars so as not to obstruct traffic on Pine Crest Road" and obstructed the Pine Crest Road crossing " for a period in excess of five minutes" at the time of the accident.

Effective January 1, 1996, the ICCTA abolished the Interstate Commerce Commission (ICC) and created a new Surface Transportation Board (STB) to regulate, inter alia, rail transportation in the United States. 49 U.S. C. 10501(a)(1); *Friberg,* 267 F.3d at 442. The purpose of the ICCTA is to " build[ ] on the deregulatory policies that have promoted growth and stability in the surface transportation sector." H.R.Rep. No. 104-311, at 93 (1995), *reprinted in* 1995 U.S. C.C.A.N. 793, 805. With respect to rail transportation, the ICCTA seeks to implement a " [f]ederal scheme of minimal regulation for this intrinsically interstate form of transportation," and to retain only regulations " that are necessary to maintain a ' safety net' or ' backstop' of remedies to address problems of rates, access to facilities, and industry restructuring." *Id.* at 93, 96, 1995 U.S. C.C.A.N. at 805, 808; *see also* 49 U.S. C. 10101(2).

The ICCTA creates exclusive federal regulatory jurisdiction and exclusive federal remedies. Specifically, the ICCTA provides:

The jurisdiction of the [STB] over-
(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
Page 805
is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.
49 U.S. C. 10501(b).

Section 10501(b) thus has two sentences: the first " defining the authority of the STB in dealing with the fundamental aspects of railroad regulation, and barring others from interfering with those decisions by making the jurisdiction exclusive" ; and the second providing that the " remedies available at the STB dealing with ' rates, classifications, rules, ... practices, routes, services, and facilities of such carriers,' are exclusive." *Franks,* 593 F.3d at 409-10. We refer to these two sentences as the exclusive-jurisdiction provision and the exclusive-remedies provision, respectively. The exclusive-remedies provision is " the relevant part of Section 10501(b)" for determining the scope of the ICCTA's preemption of state law. *Id.* at 410. Focusing on the word " regulation" in the exclusive-remedies provision, we have held that 10501(b) expressly preempts " only laws that have the effect of *managing* or *governing* rail transportation." *Id.* (emphasis added).[3] Similarly, " [t]o the extent remedies are provided under laws that have the effect of regulating [i.e., managing or governing] rail transportation," they too are expressly preempted. *Id.* [4] On the other hand, 10501(b) does not expressly preempt generally applicable state laws that have a mere " remote or incidental effect on rail transportation." *Id.* [5] If a state law is not expressly preempted by the ICCTA, it still may be impliedly preempted if, as applied to a particular case, it has " the effect of unreasonably burdening or interfering with rail transportation." *Id.* at 414.

As a final matter, we observe Congress was particularly concerned about state *economic* regulation of railroads when it enacted the ICCTA. The House Report on the ICCTA states that 10501(b) reflects a " [f]ederal policy of occupying the entire field of economic regulation of the interstate rail transportation system" and establishes " the direct and complete pre-emption of State economic regulation of railroads." H.R.Rep. No. 104-311, at 95-96, 1995 U.S. C.C.A.N. at 807, 808. The House Report explains:

[a]lthough States retain the police powers reserved by the Constitution, the Federal scheme of economic regulation and deregulation is intended to address and encompass all such regulation and to be completely exclusive. Any other construction would undermine the uniformity
Page 806
of Federal standards and risk the balkanization and subversion of the Federal scheme of minimal regulation....

*Id.* at 96, 1995 U.S. C.C.A.N. at 808. The preemptive effect of 10501(b) may not be limited to state economic regulation,[6] but economic regulation is at the core of ICCTA preemption. *See Friberg,* 267 F.3d at 443 (" [I]t appears manifest that Congress intended the ICCTA to further that exclusively federal [regulatory] effort, at least in the economic realm." ); *see also Fayus Enters. v. BNSF Ry. Co.,* 602 F.3d 444, 451 (D.C.Cir.2010) (recognizing that " the core of ICCTA preemption is ' economic regulation' " ); *PCS Phosphate Co., Inc. v. Norfolk S. Corp.,* 559 F.3d 212, 219 (4th Cir.2009) (observing that voluntary agreements " do not fall into the core of economic regulation that the ICCTA was intended to preempt" ).

3. *The ICCTA completely preempts the Elams' negligence per se claim.*

In *Friberg v. Kansas City Southern Railway,* we held the ICCTA at least defensively preempted a negligence per se claim based on a state antiblocking statute substantially identical to the

Mississippi statute at issue in this case.[7]267 F.3d at 444. We reasoned that the ICCTA does not permit states to directly regulate " a railroad's economic decisions such as those pertaining to train length, speed or scheduling." *Id.* at 444. Sitting en banc, we confirmed this holding in *Franks Investment v. Union Pacific Railroad.* 593 F.3d at 411. The only issue here is whether *Friberg* applies to the context of complete preemption.

We have already held the ICCTA completely preempts state law tort actions that " fall squarely" under 10501(b). *PCI Transp. Inc. v. Fort Worth & W. R.R. Co.,* 418 F.3d 535, 540 (5th Cir.2005); [8] *Barrois,* 533 F.3d at 331. We have not yet defined what it means to " fall squarely" under 10501(b), but our cases provide some guidance. First, as discussed above, 10501(b) expressly preempts only state laws that " manage or govern" rail transportation. *Franks,* 593 F.3d at 411; *see also* H.R. Conf. Rep. No. 104-422, at 167 (1995), *reprinted in* 1995 U.S. C.C.A.N. 850, 853 (stating that " exclusivity is limited to remedies with respect to rail regulation— not State and Federal law generally" ). This suggests a state law does not " fall squarely" under 10501(b) unless it attempts to manage or govern rail transportation. Second, we have recognized the core purpose of 10501(b) is to prevent states from regulating rail transportation in the " economic realm." *Friberg,* 267 F.3d at 443; *see also Fayus,* 602 F.3d at 451. This recognition is consistent with Congress's intent regarding the completely preemptive effect of 10501(b). *See* H.R.Rep. No. 104-311, at 95-96, 1995 U.S. C.C.A.N. at 807, 808 (asserting " the direct and complete pre-emption of State

Page 807

economic regulation of railroads." ). This suggests a state law does not " fall squarely" under 10501(b) unless it attempts to manage or govern rail transportation in the economic realm. Lastly, we have specifically determined that a state law tort remedy that would directly regulate a railroad's switching rates and services falls squarely under 10501(b). *PCI,* 418 F.3d at 540; *see also Port City Props. v. Union P. R.R. Co.,* 518 F.3d 1186, 1188 (10th Cir.2008) (citing *PCI* and finding state law tort remedy targeting delivery services on rail spur completely preempted). Implicit in our determination was a recognition that a rail operator's decisions about switching rates and services are economic decisions. *See Friberg,* 267 F.3d at 444 (finding that a railroad's economic decisions include " those pertaining to train length, speed or scheduling" ).

We read these cases together as establishing that 10501(b) completely preempts state laws (and remedies based on such laws) that directly attempt to manage or govern a railroad's decisions in the economic realm.[9] Put another way, when a plaintiff's tort claim directly attempts to manage or govern a railroad's decisions in the economic realm, that claim " is either wholly federal or nothing at all." *Barrois,* 533 F.3d at 330.

The Elams' negligence per se claim fits this mold. Mississippi's antiblocking statute directly attempts to manage KCSR's switching operations, including KCSR's decisions as to train speed, length, and scheduling. The statute thus " reach[es] into the area of economic regulation," *Friberg,*

267 F.3d at 443-44, " in a direct way." *Franks,* 593 F.3d at 411. Because Mississippi's antiblocking statute is a direct attempt to manage KCSR's decisions in the economic realm, the statute is completely preempted by the ICCTA. And because the Elams' negligence per se claim is based solely on Mississippi's antiblocking statute, it too is completely preempted.

We note the economic effects of Mississippi's antiblocking statute are not merely incidental to an otherwise valid state law . *See Franks,* 593 F.3d at 411. Unlike generally applicable state property laws and rules of civil procedure that on their face " have nothing to do with railroad crossings," *id.,* Mississippi's antiblocking statute homes in on " railroad compan[ies]" and rail " cross[ings]." MISS.CODE 77-9-235. Indeed, the statute has no application except with respect to the operation of railroads at rail crossings.

 The Elams point out that their negligence per se claim, unlike the negligence per se claim at issue in *Friberg,* involves " safety issues." But focusing on the Elams' particular reason for enforcing Mississippi's antiblocking statute misses the point. Regardless of why the Elams brought their negligence per se claim, the effect of the claim is to economically regulate KCSR's switching operations. To be sure, not every state law targeting rail operations is completely preempted by the ICCTA. Under the standards we have discussed, the ICCTA will not completely preempt valid exercises of a state's police powers in most cases. *See Fayus,* 602 F.3d at 451 (distinguishing economic regulations from public health, safety, and environmental regulations).[10] Indeed, the

Page 808

Federal Railroad Safety Act (FRSA) expressly provides that states may enact (and citizens may enforce) rail safety laws in certain circumstances. *See* 49 U.S. C.  20106(a)(2), (b)(1); *see also Tyrrell v. Norfolk S. Ry. Co.,* 248 F.3d 517, 523 (6th Cir.2001) (" [T]he ICCTA and its legislative history contain no evidence that Congress intended for the STB to supplant the FRA's authority over rail safety." ). But we have already determined that a state antiblocking statute like the one at issue in this case does not pertain to " traditionally state-controlled safety issues." *Friberg,* 267 F.3d at 444 n. 18. The statute therefore is incompatible with the ICCTA and not saved by the FRSA.[11]

We emphasize our holding so far is not broad. We do not anticipate many state law claims will be completely preempted (and thus removable to federal court) under the standards we have discussed. Complete preemption applies only when a plaintiff's claim directly attempts to manage or govern a railroad's decisions in the economic realm. A negligence per se claim based on Mississippi's antiblocking statute happens to be one such claim.

*4. The district court would have original jurisdiction over the Elams' negligence per se claim.*

 The Elams approach the complete preemption issue from yet another perspective. The Elams contend the district court could not have exercised original (and hence removal) jurisdiction over

their negligence per se claim because the STB has " exclusive" jurisdiction over claims under the ICCTA. *See* 49 U.S. C. 10501(b)(1) (providing that STB has " exclusive" jurisdiction over remedies provided in ICCTA). The Elams point to the Second Circuit's decision in *Sullivan v. American Airlines*, which held that the Railway Labor Act (RLA) does not completely preempt state-law-based minor disputes because minor disputes under the RLA cannot be filed in the first instance in federal court. 424 F.3d 267, 276 (2d Cir.2005). The Elams' argument is unpersuasive in the context of the ICCTA for several reasons.

First, we have already held the ICCTA may completely preempt at least some state law tort claims. *See PCI,* 418 F.3d at 540. This alone prevents us from adopting *Sullivan* 's reasoning in this context.

Second, the district court would have had original jurisdiction over the Elams' negligence per se claim under 28 U.S. C. 1331 and 1337. Section 1337 authorizes " original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies...." 28 U.S. C. 1337(a); *see also* 28 U.S. C. 1331 (authorizing original jurisdiction of all civil actions arising under federal laws). For the reasons already discussed, the Elams' negligence per se claim arises under the ICCTA, a federal statute protecting interstate rail transportation against state regulation and restraints. *See CSX Transp. Co. v. Novolog Bucks Cnty.,* 502 F.3d 247, 252 (3d Cir.2007) (recognizing original " federal question

Page 809

jurisdiction under 28 U.S. C. 1337 over cause of action arising under the Interstate Commerce Act" ); *Fla. E. Coast Ry.,* 266 F.3d at 1326 (same); *cf. Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 533-34, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) (per curiam) (recognizing federal question jurisdiction and 1337 jurisdiction over claim arising under Interstate Commerce Act); *Louisville & N.R. Co. v. Rice,* 247 U.S. 201, 202-03, 38 S.Ct. 429, 62 L.Ed. 1071 (1918) (same).

Third, the plain text of the ICCTA contemplates civil actions against rail carriers. Section 11704(c)(1) provides " [a] person may file a complaint with the Board under section 11701(b) of this title *or bring a civil action under subsection (b) of this section* to enforce liability against a rail carrier providing transportation subject to the jurisdiction of the Board under this part." 49 U.S. C. 11704(c)(1). Subsection (b) states " [a] rail carrier providing transportation subject to the jurisdiction of the Board under this part is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this part." 49 U.S. C. 11704(b). As the First Circuit has correctly observed, " [t]he most natural reading of this language is that it authorizes a person who has suffered damages as a result of a rail carrier's violation of the ICCTA either to file a complaint with the STB or to bring a civil action." *Pejepscot Indus. Park, Inc. v. Me. Cent. R.R. Co.,* 215 F.3d 195, 202 (2000); *see also I.C.C. v. Atl. Coast Line R.R. Co.,* 383 U.S. 576, 579-80,

86 S.Ct. 1000, 16 L.Ed.2d 109 (1966) (stating that under former Interstate Commerce Act, a " complainant is given the alternatives of seeking such damages by complaint to the Commission ... or of bringing suit in a federal district court" ).

Fourth, courts have repeatedly applied the judicial doctrine of " primary jurisdiction" in the context of both the ICCTA and its predecessor statute, the Interstate Commerce Act (ICA). *See, e.g., Atl. Coast Line,* 383 U.S. at 579-80 (ICA); *United States v. W. P. R.R. Co.,* 352 U.S. 59, 63-64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) (same); *Hansen v. Norfolk & W. Ry. Co.,* 689 F.2d 707, 710 (7th Cir.1982) (same); *Novolog,* 502 F.3d at 252 (ICCTA); *Pejepscot,* 215 F.3d at 202 (same). The doctrine of primary jurisdiction attempts to maintain " proper relationships between the courts and administrative agencies" by suspending judicial process pending the " referral" of certain issues to an administrative agency for its views. *W. Pac.,* 352 U.S. at 63-64, 77 S.Ct. 161; *see also* 28 U.S. C. 1336(b) (providing district court may refer action to STB for determination). Despite its name, the doctrine of primary jurisdiction " is not related to the *subject matter jurisdiction* of the district court over the underlying action." *S. New Eng. Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 136 (2d Cir.2010); *see also Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (" Referral of the issue to the administrative agency does not deprive the court of jurisdiction...." ). Indeed, the doctrine of primary jurisdiction *presumes* original federal subject matter jurisdiction. *See W. Pac.,* 352 U.S. at 63-64, 77 S.Ct. 161 (stating that doctrine of primary jurisdiction " applies where a claim is *originally* cognizable in the courts" (emphasis added)); *Ill. Bell Tel. Co., Inc. v. Global NAPs Ill., Inc.,* 551 F.3d 587, 595 (7th Cir.2008) (" Despite the term primary jurisdiction, the reference of a case to an agency pursuant to that doctrine, rather than denying the jurisdiction of the court over the case, presupposes that jurisdiction." ). Thus, when courts have applied the doctrine of primary jurisdiction to claims under the ICA and the ICCTA,

Page 810

they have also implicitly acknowledged the claims were properly filed in federal court.

To the extent 11501(b)(1) and 11704(c)(1) are in tension, we must attempt to read the provisions " together to produce a harmonious whole." *Doe v. KPMG, LLP,* 398 F.3d 686, 688 (5th Cir.2005); *see also Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (stating acts of Congress " should not be read as a series of unrelated and isolated provisions" ). In fact, we think the doctrine of primary jurisdiction provides the best way to reconcile 10501(b) and 11704(c)(1). Under the ICA, the ICC had " exclusive primary jurisdiction" to decide certain matters affecting transportation policy. *W. Pac.,* 352 U.S. at 63, 77 S.Ct. 161. Viewed in this light, 10501(b) also may be interpreted as vesting the STB with " exclusive" primary jurisdiction over the remedies provided in the ICCTA. 49 U.S. C. 10501(b)(1). When a civil action in federal court arises under the ICCTA, the action ordinarily should be stayed and the relevant claims referred to the STB. But recognizing the STB's primary jurisdiction does not divest the district court of its original subject matter jurisdiction. *Reiter,* 507 U.S. at 268, 113 S.Ct. 1213. Thus interpreted, 10501(b) and the doctrine of primary jurisdiction ensure both that the STB remains the primary

policy maker on matters arising under the ICCTA, and also that matters falling squarely under the ICCTA do not languish in state courts for lack of federal removal jurisdiction.

Furthermore, when the text of a statute is susceptible of more than one reasonable meaning, we may look to legislative history to discern legislative intent. *See United States v. Valle,* 538 F.3d 341, 345 (5th Cir.2008). Here, legislative history suggests Congress did not intend 10501(b) to preclude original (or removal) federal jurisdiction over claims arising under the ICCTA.

For one, Congress was clear that 10501(b) establishes the " complete pre-emption" of state economic regulation of railroads. H.R.Rep. No. 104-311, at 95-96, 1995 U.S. C.C.A.N. at 807, 808. Complete preemption and removal jurisdiction are simply two sides of the same coin: a finding of complete preemption " represents a conclusion that all claims on the topic arise under federal law, so that 28 U.S. C. 1441 permits removal." *Pollitt v. Health Care Serv. Corp.,* 558 F.3d 615, 616 (7th Cir.2009); *see also Barrois,* 533 F.3d at 331 (" Complete preemption is a ' jurisdictional doctrine....' " ). In expressing its intent to completely preempt state economic regulation of railroads, Congress also was expressing its intent that claims attempting to enforce such state regulations would be removable. As the First Circuit recognized in *Pejepscot,* the basic purpose of the ICCTA is to federalize the regulation of rail transportation, not deprive the federal courts of jurisdiction. 215 F.3d at 204-05.

Moreover, legislative history indicates that current 11704(c)(1) was intended to " *reenact* [ ] the applicable rail portions of former section 11705" of the ICA. H.R. Conf. Rep. No. 104-422, at 195, 1995 U.S. C.C.A.N. at 880 (emphasis added). Current 11704(c)(1) is almost identical to former 11705(c)(1),[12] and " civil actions against rail carriers under [former 11705] were routinely brought in federal

Page 811

district court." *Pejepscot,* 215 F.3d at 203; *see also Atl. Coast Line,* 383 U.S. at 579-80, 86 S.Ct. 1000 (recognizing ICA gives complainant choice of " bringing suit in a federal district court" ); *S. P. Transp. Co. v. San Antonio, Tex. by and through City Pub. Serv. Bd.,* 748 F.2d 266, 271 n. 11 (5th Cir.1984) ( " Although the notion of exclusive jurisdiction in the I.C.C. may once have found voice in the Supreme Court ... subsequent cases have established that reasonableness claims may be brought in federal court." ). Notably, courts found original federal jurisdiction under the ICA even though the ICC's jurisdiction, like the STB's jurisdiction, was described as " exclusive." *See* 49 U.S. C. 10501(d) (1994). We will not presume Congress intended 10501(b) to withdraw original federal jurisdiction over claims arising under the ICCTA, particularly when such jurisdiction was commonly exercised under the similarly worded ICA. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 644, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (declining to presume Congress intended to withdraw federal question jurisdiction); *Cannon v. Univ. of Chi.,* 441 U.S. 677, 696-98, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (presuming Congress was aware of judicial interpretations of earlier statute).

For the reasons stated, the Elams' negligence per se claim arises under the ICCTA, and the district court would have had original jurisdiction over the claim under 28 U.S. C. 1331 and 1337. The district court therefore had removal jurisdiction under 28 U.S. C. 1441. Moreover, the district court had supplemental jurisdiction over the Elams' other state law claims because they all arise out of the same common nucleus of operative fact, namely, the accident at the Pine Crest Road crossing. *See* 28 U.S. C. 1367(a); *Giles v. NYLCare Health Plans, Inc.,* 172 F.3d 332, 337-38 (5th Cir.1999) ( " When a complaint raises both completely-preempted claims and arguably conflict-preempted claims, the court may exercise removal jurisdiction over the completely-preempted claims and supplemental jurisdiction ... over the remaining claims." ). Accordingly, we hold the district court properly exercised jurisdiction over this action.

5. *Referral to the STB was not required.*

The Supreme Court has stated " [n]o fixed formula exists for applying the doctrine of primary jurisdiction." *W. Pac.,* 352 U.S. at 64, 77 S.Ct. 161. We have recognized agency referral is favored when (a) it will promote even-handed treatment and uniformity in a highly regulated area, or when sporadic action by federal courts would disrupt an agency's delicate regulatory scheme; or (b) the agency possesses expertise in a specialized area with which the courts are relatively unfamiliar. *Mercury Motor Express, Inc. v. Brinke,* 475 F.2d 1086, 1092 (5th Cir.1973). A district court " has discretion either to retain jurisdiction [while the action is refereed to the agency] or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Reiter,* 507 U.S. at 268-69, 113 S.Ct. 1213. In any event, " the doctrine of primary jurisdiction is not a doctrine of futility; it does not require resort to ' an expensive and merely delaying administrative proceeding' " when there are no substantial issues for the agency to decide. *Local Union No. 189 v. Jewel Tea Co.,* 381 U.S. 676, 686, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965) (quoting *Fed. Mar. Bd. v. Isbrandtsen Co.,* 356 U.S. 481, 521, 78 S.Ct. 851, 2 L.Ed.2d 926) (Frankfurter, J., dissenting); *Skaw v. United States,* 740 F.2d 932, 938 (Fed.Cir.1984).

Here, the district court did not abuse its discretion in dismissing without prejudice the Elams' negligence per se

Page 812

claim. The ICCTA establishes liability " for damages sustained by a person as a result of an act or omission of that carrier *in violation of this part.* " 49 U.S. C. 11704(b). The Elams allege they sustained damages because KCSR blocked the Pine Crest Road crossing for more than five minutes, but the Elams do not contend blocking a road crossing for more than five minutes violates any provision of the ICCTA or the STB's regulations. Indeed, we held in *Friberg* that " nothing in the ICCTA" provides authority for imposing operating limitations on a railroad like those imposed by Mississippi's antiblocking statute. 267 F.3d at 444. Because the Elams have not identified any substantial claim or issue requiring resolution by the STB, it would be futile to refer

their negligence per se claim to the STB. The district court properly dismissed this claim.

For the reasons stated, we AFFIRM the dismissal of the Elams' negligence per se claim.

### 6. Diversity Jurisdiction

A federal district court may exercise original diversity jurisdiction under 28 U.S. C. 1332 only if the plaintiffs and the defendants are completely diverse. See, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). " In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Id. Although both Michael and the Elams are residents of Mississippi, KCSR contends the district court could have exercised diversity jurisdiction over this action because Michael is an improper party. The district court properly rejected this contention.

We have recognized two ways for a defendant to show improper joinder for purposes of federal diversity jurisdiction: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the nondiverse party in state court. Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir.2004) (en banc). Only the second way is relevant to this case, and thus the test for improper joinder is whether KCSR has demonstrated there is " no reasonable basis for the district court to predict that the plaintiff might be able to recover against" Michael. Id. We resolve " all contested factual issues and ambiguities of state law in favor of" the Elams. Gasch v. Hartford Accident & Indem. Co., 491 F.3d 278, 281 (5th Cir.2007).

Our decision in Travis v. Irby is closely on point. In Travis, a train struck an automobile at a rail crossing. 326 F.3d 644, 646 (5th Cir.2003). The driver's mother sued the owner of the train and the train's engineer in state court. Id. Although both the plaintiff and the engineer resided in Mississippi, the defendants attempted to remove the action based on federal diversity jurisdiction. Id. The district court denied the plaintiff's motion to remand, finding the engineer was improperly joined because the plaintiff did not at the time have evidence to support her claims against the engineer. Id. at 649. We reversed, observing that " [u]nder Mississippi law, [the engineer] owed a duty to exercise reasonable care to avoid injuring [the driver] at the railroad crossing." Id. (citing New Orleans & N.R. Co. v. Lewis, 214 Miss. 163, 58 So.2d 486, 490 (1952)). We also observed the engineer " can be held personally responsible for negligent acts committed within the scope of his employment." Id. (citing Harrison v. Ill. C. R.R. Co., 219 Miss. 401, 69 So.2d 218, 222 (1954)). We concluded that " simply

### Page 813

pointing to the plaintiff's lack of evidence at this stage of the case is insufficient to show that there is no possibility for [the plaintiff] to establish [the engineer]'s liability at trial." Id. at 650-51.

Here, as in *Travis*, the Elams allege facts providing at least a reasonable basis to predict Michael was negligent. The Elams allege Michael blocked " the crossing without giving any warning or signal indicating the locomotive engine and freight cars were present." The Elams also allege Michael failed to " maintain warning devices, bells, lights, flashing signals, or other reasonable warning devices calculated to warn approaching motorists of the stationary locomotive engine and train." KCSR, of course, disputes these allegations. KCSR asserts " Michael did in fact blow the train's whistle and ring its bell as it approached the Crossing and continued to sound these warnings in compliance with Kansas City Southern's rules and Mississippi law until the train had fully occupied the Crossing." Mississippi law, however, appears to require that a " bell shall be kept ringing continuously or the whistle or horn shall be kept blowing at repeated intervals until said crossing is *passed.* " MISS.CODE 77-9-225 (emphasis added). KCSR also relies on Mississippi's " occupied crossing rule," which provides that " a train legitimately stopped or standing over a public crossing because of its tremendous size is all the warning the traveling public is entitled to." *King v. Ill. Central R.R.,* 337 F.3d 550, 553 (5th Cir.2003). The Elams, however, invoke the " peculiar environment or hazardous condition" exception to the occupied crossing rule. *See id.*

In short, there are contested issues of fact and ambiguities of state law that must, at this jurisdictional stage, be resolved in the Elams' favor. *Gasch,* 491 F.3d at 281. Accordingly, we find Michael is not an improper party to this action, and the district court therefore would not have diversity jurisdiction over this action.

### B. The Elams' simple negligence claim

Having established federal jurisdiction, we now turn to whether the ICCTA preempts the Elam's simple negligence claim. We conclude it does not, at least on the current record.

A typical negligence claim seeking damages for a typical crossing accident (such as the Elams' simple negligence claim) does not directly attempt to manage or govern a railroad's decisions in the economic realm. Like state property laws and rules of civil procedure that generally " have nothing to do with railroad crossings," the effects of state negligence law on rail operations are merely incidental. *Franks,* 593 F.3d at 411. Accordingly, we conclude the ICCTA does not expressly or completely preempt the Elams' simple negligence claim.

Because the ICCTA does not completely preempt the Elams' simple negligence claim, our inquiry is whether Mississippi's negligence law, as applied to the facts of this case, would " have the effect of unreasonably burdening or interfering with" KCSR's operations. *Id.* at 414. Our inquiry is " fact-based," and KCSR must come forward with evidence of the specific burdens imposed. *Id.* at 415. General evidence that rail crossings affect rail transportation is insufficient. *Id.* Moreover, we begin with the assumption that Congress did not intend to supersede the historic police powers of the states " to protect the health and safety of their citizens." *Medtronic,* 518 U.S. at 475, 116 S.Ct. 2240; *Demahy v. Actavis, Inc.,* 593 F.3d 428, 435 (5th Cir.2010). As this Court recognized in

*Barrois,* " the care of grade crossings is peculiarly within the police power of the states."

Page 814

533 F.3d at 333 (citing *Lehigh Valley R.R. Co. v. Bd. of Publ. Util. Comm'rs* 278 U.S. 24, 35, 49 S.Ct. 69, 73 L.Ed. 161 (1928)); H.R.Rep. No. 104-311, at 96, 1995 U.S. C.C.A.N. at 808 (stating " States retain the police powers reserved by the Constitution...." ).

The Elams assert several theories of negligence. In essence, the theories all allege that KCSR failed to provide adequate warnings of the train's presence at the Pine Crest Road crossing.[13] The issue is whether KCSR has demonstrated that providing such warnings would unreasonably burden or interfere with its switching operations.

KCSR has produced an affidavit asserting:

[l]imiting the amount of time KCS[R] can block a crossing, including the crossing in question, or otherwise regulating how KCS[R] uses the tracks in switching, will directly impact KCS[R]'[s] operation, and will necessitate changes in switching, train length, and crew operations. Such would, in turn, adversely impact KCS[R] economically since such would affect how and when KCS [R] trains arrive and depart, and the number of separate trains KCS[R] must operate.

This affidavit does not defeat the Elams' simple negligence claim for two reasons. First, although the affidavit addresses the burdens of Mississippi's antiblocking statute, it does not address the burdens of providing adequate warnings of the train's presence at the Pine Crest Road crossing. We see no apparent reason why providing such warnings would require changes in KCSR's switching, train length, and crew operations. Second, in any event, the affidavit does not demonstrate that providing adequate warnings at the Pine Crest Road crossing would *unreasonably* burden or interfere with KCSR's operations. In the absence of such evidence, we presume Congress did not intend to preempt this " typical dispute[ ]" concerning the safety of a " typical crossing[ ]." *Franks,* 593 F.3d at 415.

KCSR has not met its burden of showing that the Elams' simple negligence claim is preempted. Because preemption was the sole basis for the district court's sua sponte dismissal of this claim, we reverse and remand to the district court for further proceedings. The district court will need to determine whether the Elams' simple negligence claim in turn should be remanded to Mississippi state court. See 28 U.S. C. 1367(c), 1441(c); *Barrois,* 533 F.3d at 333 (recognizing that routine " crossing cases are typically resolved in state courts" ).

As a final matter, KCSR asserts we should uphold the dismissal of the Elams' simple negligence claim on the merits. We do not reach the merits because they were not adequately briefed to either the district court or this Court. Indeed, because the district court sua sponte dismissed the Elams' claims on a motion to remand, KCSR has not yet even filed a motion to dismiss. *See, e.g., Bogy v. Ford Motor Co.,* 538 F.3d 352, 355 (5th Cir.2008) (" Although we have the authority to consider grounds presented to but not ruled upon by the district court, we decline to do so

because the plaintiffs did not address the various other grounds in their briefing, and we think the better course is for the district court to address those issues in the

Page 815

first instance." ); *Betzel v. State Farm Lloyds,* 480 F.3d 704, 709 (5th Cir.2007) (declining to consider in first instance question of state law that was not fully briefed by parties).

IV. CONCLUSION

For the reasons stated, we affirm in part, reverse in part, and remand to the district court for further proceedings.

---------

Notes:

[1] Bobby Elam additionally asserts a claim of tortious interference with spousal relationship, but this claim is based on " the combined and concurrent negligence of the defendants." The claim thus rises or falls with the Elams' negligence claim.

[2] Mississippi's antiblocking statute provides:
Every railroad company, upon stopping any train at a place where such railroad shall cross a highway, shall so uncouple its cars as not to obstruct travel upon such highway for a longer period than five (5) minutes. Every railroad company shall, upon stopping a train at a place where the railroad is crossed by a street, so uncouple the cars as not to obstruct travel thereon for a longer period than shall be prescribed by ordinance of the city, town or village. A failure to observe this section shall cause a railroad company to be liable to a fine of Fifty Dollars ($50.00) for each offense.MISS.CODE 77-9-235.

[3] *See also PCS Phosphate Co., Inc. v. Norfolk S. Corp.,* 559 F.3d 212, 218 (4th Cir.2009) (quoting *Fla. E. Coast Ry. Co. v. City of W. Palm Beach,* 266 F.3d 1324, 1331 (11th Cir.2001) (" Congress narrowly tailored the ICCTA preemption provision to displace only ' regulation,' i.e., those state laws that may reasonably be said to have the effect of ' managing' or ' governing' rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." )); *Adrian & Blissfield R.R. Co. v. Vill. of Blissfield,* 550 F.3d 533, 539 (6th Cir.2008) (same).

[4] *See also Pace v. CSX Transp., Inc.,* 613 F.3d 1066, 1070 (11th Cir.2010) (finding that states may not circumvent ICCTA with tort remedies).

[5] *See also Ass'n of Am. R.R. v. S. Coast Air Quality Mgmt. Dist.,* 622 F.3d 1094, 1097 (9th Cir.2010) (recognizing that ICCTA permits the " continued application of laws having a more

remote or incidental effect on rail transportation" ); *PCS Phosphate,* 559 F.3d at 218 (same); H.R. Conf. Rep. No. 104-422, at 167 (1995), *reprinted in* 1995 U.S. C.C.A.N. 850, 853 (stating that " exclusivity is limited to remedies with respect to rail regulation— not State and Federal law generally" ).

[6] *See, e.g., Ass'n of Am. R.R.,* 622 F.3d at 1098 (rejecting argument that " ICCTA preempts only economic regulation" ); *Fayus Enters. v. BNSF Ry. Co.,* 602 F.3d 444, 451 (D.C.Cir.2010) (" Several of the cases, in addressing these environmental regulations, note that the ICCTA ' does not preempt only explicit economic regulation.' " ).

[7] *Friberg* did not address whether the ICCTA completely or merely defensively preempted Texas's antiblocking statute. Texas's antiblocking statute " prohibited railroad officers, agents, servants or receivers from wilfully allowing a standing train to block a street, highway or railroad crossing for more than five minutes." *Friberg,* 267 F.3d at 441 n. 2.

[8] In *PCI,* we held the ICCTA completely preempted a claim of intentional interference with contractual relations that sought injunctive relief imposing a variety of restrictions on a rail operator's fees and delivery practices. 418 F.3d at 538.

[9] We need not define the contours of the " economic realm." Wherever they lie, we have held they include antiblocking statutes like the one at issue in this case. *See Friberg,* 267 F.3d at 444.

[10] *See also Norfolk S. Ry. Co. v. City of Alexandria,* 608 F.3d 150, 160 (4th Cir.2010) (same); *Emerson v. Kan. City S. Ry. Co.,* 503 F.3d 1126, 1133 (10th Cir.2007) (same); *Green Mountain R.R. Corp. v. Vermont,* 404 F.3d 638, 643 (2d Cir.2005) (same); H.R.Rep. No. 104-311, at 95-96, 1995 U.S. C.C.A.N. at 807, 808 (stating that states retain police powers); H. R. Conf. Rep. No. 104-422, at 167, 1995 U.S. C.C.A.N. at 852 (stating that " exclusivity is limited to remedies with respect to rail regulation— not State and Federal law generally" ).

[11] The FRSA provides that certain state safety laws and personal injury actions are not preempted as long as, inter alia, they are " not incompatible" with other federal laws. *See* 49 U.S. C.  20106(a)(2)(B),  (b)(1)(B) (emphasis added).

[12] Under the ICA,  11705 provided: " A person may file a complaint with the [ICC] under section 11701(b) of this title or bring a civil action under subsection (b)(1) or (2) of this section to enforce liability against a common carrier providing transportation subject to the jurisdiction of the [ICC]...." 49 U.S. C.  11705(c)(1) (1994).

[13] To the extent the Elams allege KCSR was negligent *solely* because it blocked the Pine Crest Road crossing, that claim is impliedly preempted. For the reasons already discussed, any liability arising from such a claim would " have the effect of unreasonably burdening or interfering with" KCSR's decisions in the economic realm. *Franks,* 593 F.3d at 411; *Friberg,* 267 F.3d at 443.

---------