IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| 14500 LIMITED, an Ohio Limited Liability Company | Civil Action No. 1:12-cv-01810 |
| Plaintiff, | Judge Christopher A. Boyko |
| v. | |
| CSX TRANSPORTATION, INC., a Virginia Corporation, | |
| Defendant. | |

**CSX TRANSPORTATION, INC.'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR REMAND [DOC. 5]
AND SUPPORTING MEMORANDUM OF LAW[1]**

---

[1] Pursuant to Local Rule 7.1(f), this Response in Opposition is subject to the twenty (20) page limit for memorandum relating to dispositive motions in standard or unassigned cases. *See Vogel v.  U.S. Office Prods. Co.*, 258 F.3d 509, 514-17 (6th Cir. 2001) (addressing "whether a remand motion is nondispositive or dispositive," and holding that the Sixth Circuit "agree[s] with the Third and Tenth Circuits that remand motions are dispositive").

# TABLE OF CONTENTS

Page No.

TABLE OF CITATIONS ....................................................................................ii

I.     STATEMENT OF ISSUES ....................................................................1

II.    SUMMARY OF THE ARGUMENT .....................................................1

III.   FACTUAL AND PROCEDURAL BACKGROUND.............................4

        A.     The Parcel That Plaintiff Seeks To Adversely Possess Is An
              Essential Part Of CSXT's Active Collinwood Rail Yard .............................4

        B.     Plaintiff's Lawsuit Seeks To Permanently Deprive CSXT
              Of Its Ability To Use The CSXT Parcel For Its Future
              Rail Transportation Operations...................................................................5

IV.   LAW AND ARGUMENT ......................................................................6

        A.     Plaintiff's Adverse Possession Claim Is Wholly
              Displaced By ICCTA ..................................................................................6

        B.     The Broad Scope Of ICCTA's Express Preemption Provision ....................8

        C.     ICCTA Preempts Plaintiff's State Law Adverse Possession Claim
              That Seeks To Manage Or Govern CSXT Rail Transportation
              Activities and Facilities.............................................................................10

        D.     CSXT's Ability To Use The CSXT Parcel For Its Future
              Rail Transportation Needs Is Subject To ICCTA Preemption.....................12

        E..    The STB's Recent Decision in *Jio Ao* Demonstrates That
              Plaintiff's Adverse Possession Claim Is Completely
              Preempted By ICCTA................................................................................14

        F.     This Court Also Has Diversity Jurisdiction ...................................................16

V.     CONCLUSION.....................................................................................19

CERTIFICATE OF COMPLIANCE WITH VOLUME-TYPE LIMITATION ...................20

CERTIFICATE OF SERVICE ..............................................................................20

i

# TABLE OF AUTHORITIES

Page Nos.

CASES

*Adrian & Blissfield R.R. Co. v. Vill. of Blissfield*
    550 F.3d 533 (6th Cir. 2008) ........................................................................2,9,12

*Aetna Health Inc. v. Davila*
    542 U.S. 200 (2004).........................................................................................6

*Allied Erecting & Dismantling Co. v. Ohio Cent. R.R., Inc.*
    No. 4:06cv509, 2006 U.S. Dist. LEXIS 76542,
    at *15 (N.D. Ohio Oct. 11, 2006) ...................................................................7

*Allied Indus. Dev. Corp. v. Ohio Cent. R.R.*
    No. 4:09-cv-01904, 2010 U.S. Dist. LEXIS 23994,
    at *10-11 (N.D. Ohio Mar. 15, 2010) ............................................................7

*Beneficial Nat'l Bank v. Anderson*
    539 U.S. 1 (2003)............................................................................................6

*Bergstrom v. Burlington N. R.R.*
    895 F. Supp. 257 (D.N.D. 1995 ....................................................................18

*Boston & Maine Corp. & Town of Ayer, MA, Joint Pet. for Decl.*
    *Order* – Fin. Dkt. No. 33971, 2001 STB LEXIS 435,
    at * 17 (Apr. 30, 2001 ................................................................................2, 13

*Brobander v. Unum Life Ins. Co. of Am.*
    2007 U.S. Dist. LEXIS 7045, at * 4 (N.D. Ohio Jan. 31, 2007)...................2, 6

*Buffalo S. R.R. Inc. v. Village of Croton-on-Hudson*
    434 F. Supp. 2d 241 (S.D.N.Y. 2006)...........................................................10

*Canadian Nat'l Ry. Co. v. Montreal, Me. & Atl. Ry.*
    750 F. Supp. 2d 189 (D. Me. 2010) ...............................................................7

*Cedarapids, Inc. v. Chicago, Cent. & Pacific R.R.*
    265 F. Supp. 2d 1005 (N.D. Iowa 2003).........................................................7

*City of Creede –Pet. for Dec. Order*
    STB Fin. Dkt. No. 34376 2005 STB LEXIS 486, at * 15 (May 3, 2005) .....13

*City of Lincoln – Pet. for Dec. Order*
    STB Fin. Dkt. No. 34425, 2004 STB LEXIS 508 (Aug. 12, 2004)...............10, 13

*City of Lincoln v. STB*
    414 F.3d 858 (8th Cir. 2005) ........................................................................10, 13, 14

*Columbia Gas Transmission Corp. v. Meadow Preserve York, LLC*
    2006 U.S. Dist. LEXIS 30645, at * 6 (N.D. Ohio May 17, 2006)................17

*Columbiana County Port Auth. v. Boardman Twp. Park Dist.*,
    154 F. Supp. 2d 1165 (N.D. Ohio 2001)........................................................2,10

*Columbiana County Port Auth. v. Boardman Twp. Park Dist.*
    2001 U.S. Dist. LEXIS 16032, at * 6 (N.D. Ohio June 20, 2001)................7,9

*Conley v. Whirlpool Corp.*
    2011 U.S. Dist. LEXIS 20629, at *9-10 (E.D. Tenn. Mar. 1, 2011) ............17

*Crosby v. America Online, Inc.*
    967 F. Supp. 257, 264 (N.D. Ohio 1997)......................................................17

*David A. Waldron & Assocs. v. Loon, LLC*
    2012 U.S. Dist. LEXIS 63669, at *10-11 (N.D. Ohio Apr. 17, 2012)..........17

*Elam v. Kan. City S. Ry.*
    635 F.3d 796 (5th Cir. 2011) ......................................................................*passim*

*Everett v. Verizon Wireless, Inc.*
    460 F.3d 818, 829 (6th Cir. 2006) ...............................................................17

*Fayard v. Northeast Vehicles Servs., LLC*,
    533 F.3d 42 (1st Cir. 2008)..........................................................................7

*Franks Inv. Co. v. Union Pac. R.R.*
    593 F.3d 404 (5th Cir. 2010) .....................................................................12

*Hampton v. R.J. Corman R.R. Switching Co. LLC*
    683 F.3d 708, n. 8 (6th Cir. 2012) ..............................................................7

*Harris Cnty. v. Union Pac. R.R. Co.*,
    807 F. Supp. 2d 624 (S.D. Tex. 2011) ........................................................7,10

*Jie Ao and Xin Zhou – Pet. for Decl. Order*
    STB Fin. Docket No. FD 35539
    2012 STB LEXIS 206 (June 4, 2012) ............................................................*passim*

*Kitzmann v. Local 619-M Graphic Communs. Conf.*
*of the Int'l Bhd. of Teamsters*
    415 Fed. Appx. 714 (6th Cir. 2011) ................................................................6

*Maumee & W. R.R. Corp. and RMW*
*Ventures, LLC –Pet. Dec. Order*
    STB Finance Docket No. 34354, 2004
    STB LEXIS 140 (S.T.B. March 2, 2004) .......................................................12

*Maynard v. CSX Transp., Inc.*
    360 F. Supp. 2d 836 (E.D. Ky. 2004
    *aff'd* Case No. 04-5448 (6th Cir. Feb. 7, 2005) .............................................11

*Metro. Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987) ..........................................................................................6

*New Orleans & Gulf Coast Ry. Co. v. Barrois*
    533 F.3d 321 (5th Cir. 2008) ........................................................................

*Norfolk S. Ry. Co. v. City of Alexandria*
    608 F.3d 150 (4th Cir. 2010) ........................................................................13

*Norfolk S. Ry. Co. v. City of Maple Heights*
    2003 U.S. Dist. LEXIS 28282, at * 8 (N.D. Ohio May 14, 2003) ................9

*Norfolk Southern Railway Co. – Pet. for Dec. Order*
    STB Fin. Dkt. No. 35196, 2010 STB LEXIS 635, at * 7 (2010) .................*passim*

*Northup Props., v. Chesapeake Appalachia, L.L.C.*
    567 F.3d 767 (6th Cir. 2009) ........................................................................17

*Norton v. Kent*
    2009 U.S. Dist. LEXIS 90119, at * 4 (N.D. Ohio Sept. 17, 2009) ...............16

*PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*
    418 F.3d 535 (5th Cir. 2005) .........................................................................7

*PCS Phosphate Co., Inc. v. Norfolk S. Corp.*
    559 F.3d 212 (4th Cir. 2009) .........................................................................7

*Ritchie v. Williams*
    395 F.3d 283 (6th Cir. 2005) .........................................................................6

*R.R. Ventures, Inc. v. Surface Transp. Bd.*
    299 F.3d 523 (6th Cir. 2002) ........................................................................9

*Soo Line R.R. Co. v. City of St. Paul*
    827 F. Supp. 2d 1017 (D. Minn. 2010)........................................................10, 12

*South Dakota R.R. Auth. v. Burlington Northern & Santa Fe Ry. Co.*
    280 F. Supp. 2d 919 (D.S.D. 2003) ............................................................7

*Union Pac. R.R. v. Chicago Transit Auth.*
    647 F.3d 675 (7th Cir. 2011) .....................................................................*passim*

*Vogel v.  U.S. Office Prods. Co.*
    258 F.3d 509 (6th Cir. 2001) .....................................................................

*Vulcan Lands, Inc. v. Chi. Title & Trust Co.*
    2008 U.S. Dist. LEXIS 39107 (N.D. Ill. May 13, 2008) ..............................3, 17

*Wilson v. Ill. Cent. R.R.*
    2009 U.S. Dist. LEXIS 69266, at *8-9 (S.D. Miss. Aug. 7, 2009)...............16

*Wisconsin Cent. Ltd. v. City of Marshfield*
    160 F. Supp. 2d 1009 (W.D. Wis. 2000) ....................................................10

STATUTES

28 U.S.C. § 1331...............................................................................................*passim*

28 U.S.C. § 1332...............................................................................................*passim*

49 U.S.C. § 10101 ............................................................................................1

49 U.S.C. § 10102(5) .......................................................................................4

49 U.S.C. § 10102(9)(a)...................................................................................8,9

49 U.S.C. § 10501(b) .......................................................................................*passim*

49 U.S.C. § 10904 ............................................................................................15

49 U.S.C. § 10907............................................................................................15

CSX Transportation, Inc. ("CSXT"), by and through undersigned counsel, hereby submits its Response in Opposition ("Response") to Plaintiff 14500 Limited's Motion for Remand ("Motion").  Doc. 5.  In support of its Response, CSXT states:

## I.  STATEMENT OF ISSUES

Plaintiff's Motion presents two issues: (i) whether Plaintiff's state law claim seeking to adversely possess a portion of CSXT's active rail yard is completely preempted by Section 10501(b) of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101, *et seq.* ("ICCTA"); and (ii) whether this Court has diversity jurisdiction under 28 U.S.C. § 1332.

## II.  SUMMARY OF THE ARGUMENT

In this lawsuit, Plaintiff seeks exclusive control and possession of – and title to – property that is part of CSXT's Collinwood Rail Yard.  Specifically, Plaintiff asks the Court to quiet title to a portion of CSXT's active Rail Yard and transfer sole ownership and possession to Plaintiff pursuant to Ohio's adverse possession laws.  As the Surface Transportation Board ("STB") and courts have repeatedly held, adverse possession suits like Plaintiff's are expressly preempted by ICCTA.  *See Jie Ao and Xin Zhou – Pet. for Decl. Order*, STB Fin. Docket No. FD 35539, 2012 STB LEXIS 206 (June 4, 2012) (collecting cases).  Contrary to Plaintiff's assertions, this is true even where the property is not currently used for rail transportation purposes, and even when "there are currently no specific plans" for such use.  *Id.*  Accordingly, ICCTA wholly displaces Plaintiff's adverse possession claim and provides this Court with removal jurisdiction.  *See Elam v. Kan. City S. Ry.*, 635 F.3d 796 (5th Cir. 2011).

Despite the ample authority cited in CSXT's Notice of Removal (Doc. 1) ("Notice"), Plaintiff now seeks to remand the case to state court.  Plaintiff's main argument against preemption is that its state law claim does not constitute the "regulation" of CSXT's rail

operations because CSXT is not actively using the property for current rail operations.  *Motion* at 8 ("At no time does the Defendant suggest that this land is being used for transportation as defined" by ICCTA).  But the law is clear that ICCTA preempts state law claims that would completely take away part of a railroad's yard or property, and thus "prevent the railroad from using it for railroad transportation in the future."  *Union Pac. R.R. v. Chicago Transit Auth.*, 647 F.3d 675, 681 (7th Cir. 2011) (emphasis added).  Plaintiff simply ignores the numerous cases, cited in CSXT's Notice, holding that state law condemnation claims are preempted by ICCTA, and the STB's repeated pronouncement that condemnation is "the most extreme type of control over rail transportation as it is defined in [ICCTA]."  *Norfolk Southern Railway Co. – Pet. for Dec. Order*, STB Fin. Dkt. No. 35196, 2010 STB LEXIS 635, at * 7 (2010); *see also Jie Ao*, 2012 STB LEXIS 206, at * 14.

Just last month, the STB – which the Sixth Circuit has recognized as "uniquely qualified to determine whether state law should be preempted" by ICCTA[2] – issued a key decision finding that ICCTA preempted a similar adverse possession claim.  *Jie Ao*, 2012 STB LEXIS 206.  As the STB correctly recognized, such claims are preempted because "adverse possession has the same legal effect on the property as condemnation – elimination of the prior ownership interest in the property."  *Id.* at * 14, n. 4.  The STB squarely rejected Plaintiff's argument here, finding that ICCTA preemption applies even if property is not *currently* used for rail purposes.  *Id.* at * 19 (even if plaintiff "is correct that the application of state adverse possession law here might have little actual, practical effect on current plans for active railroad operations, circumstances can change.").  As in *Jie Ao*, Plaintiff's "approach to preemption would permit landowners to carve off strips of railroad [rights of way] all over the country for non-rail use," and "that

---

[2] *Adrian & Blissfield R.R. Co. v. Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008) (citation omitted); *see also Columbiana County Port Auth. v. Boardman Twp. Park Dist.*, 154 F. Supp. 2d 1165, 1178 (N.D. Ohio 2001) (an STB decision is "the product of expert judgment which carries a presumption of validity.").

untenable result would undermine interstate commerce and the strong federal policy in favor of retaining rail property in the national rail network, where possible." *Id.*

Under the reasoning in *Jie Ao* and myriad other STB and court decisions, removal jurisdiction is proper in this Court. As CSXT has demonstrated, if Plaintiff prevails, CSXT's ability to use, expand, and/or reconfigure the vital Collinwood Rail Yard to handle projected future rail traffic will be limited. *See Doc.* 1-3 at 4-5, ¶¶ 8-11. And if rail traffic passing through the Collinwood Rail Yard is constrained, it could have ripple effects causing delays across CSXT's interstate rail network. *Id.* Plaintiff's claim is thus completely preempted by ICCTA and CSXT properly removed the case under 28 U.S.C. § 1331.

This Court also has jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. Plaintiff does not dispute that the parties are completely diverse. Rather, Plaintiff only asserts that the amount in controversy is below $75,000. *Motion* at 9. To defeat diversity jurisdiction, Plaintiff claims that the property's market value is only $28,000. But this is not a controversy about the current market value of a strip of railroad property. It is a controversy about CSXT's ability to use the property for future rail operations. In adverse possession cases, courts have rejected market value as the measure of the amount in controversy, and have looked instead to the future economic impact on a party caused by the loss of the property. *See Vulcan Lands, Inc. v. Chi. Title & Trust Co.*, 2008 U.S. Dist. LEXIS 39107, at *11 (N.D. Ill. May 13, 2008) ("relevant question" for determining amount in controversy in adverse possession case "is the value of the controversy, not the value of the strip of land").

CSXT has provided uncontroverted evidence that the loss of this property within CSXT's vital Rail Yard would limit its ability to use, expand, and/or reconfigure the Rail Yard, and that

this potential loss and the negative impact on CSXT's rail operations would far exceed $75,000. Doc. 1-3 at 5, ¶ 11.  As such, diversity jurisdiction also exists here.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

CSXT is one of the largest rail transportation companies in the United States.  *See* Doc. 1-3 at 2, ¶ 3.  CSXT is also a Class I railroad as defined by the STB and a "rail carrier" as defined by ICCTA.  *See id.;* 49 U.S.C. § 10102(5).  CSXT provides common carrier rail transportation services across an interstate rail network consisting of approximately 21,000 railroad route miles linking communities and commercial markets in 23 states, the District of Columbia, and two Canadian provinces.  *See* Doc. at 2, ¶ 3.  More than 4,000 railroad route miles of CSXT's rail network are located in the State of Ohio, including the Collinwood Rail Yard in Cleveland, Ohio, a portion of which is the subject of this lawsuit.  *Id.* at ¶ 5.

### A.    The Parcel That Plaintiff Seeks To Adversely Possess Is An Essential Part Of CSXT's Active Collinwood Rail Yard

In this lawsuit, Plaintiff seeks to permanently take part of CSXT's Collinwood Rail Yard (the "Parcel").  *See* Doc. 1-1 at ¶¶ 9-22.  It is undisputed that the entirety of the Parcel is included within CSXT's Collinwood Rail Yard.  *See* Doc. 1-2 at 3, ¶ 5.

The Collinwood Rail Yard is centrally located on CSXT's interstate rail network and is one of the primary CSXT rail transportation facilities in the Cleveland, Ohio area.  *Id.* at 3-4, ¶ 7. The Collinwood Rail Yard is an integral part of CSXT's rail corridor that stretches between Chicago, Illinois and Buffalo, New York (the "Rail Corridor") – one of the densest freight rail corridors in the entire eastern United States.  Doc. 1-3, at 3, ¶ 6.  The Collinwood Rail Yard is thus a vital part of CSXT's railroad operations and facilitates the efficient movement of rail traffic in interstate commerce.  Doc. 1-3, at 3, ¶ 7.

4

For more than a century, CSXT and its predecessors have owned and operated the Collinwood Rail Yard as an active rail yard for building and switching trains in interstate commerce. *See* Doc. 1-3 at 2, ¶ 6. Among other rail transportation activities, CSXT uses the Collinwood Rail Yard to refuel CSXT trains running on the Rail Corridor, to switch rail traffic and to provide rail services to local CSXT rail served customers. Doc. 1-3, at 4, ¶ 7. Numerous CSXT trains also originate and terminate at the Collinwood Rail Yard. *Id.*

**B.  Plaintiff's Lawsuit Seeks To Permanently Deprive CSXT Of Its Ability To Use The CSXT Parcel For Its Future Rail Transportation Operations**

Rail traffic at the Collinwood Rail Yard has increased in recent years and CSXT projects further rail traffic increases in the near future. Doc. 1-3, at 4, ¶ 8. Given the central location and vital role of the Collinwood Rail Yard in CSXT's interstate rail network, any limitations or restrictions on CSXT's rail operations there could negatively impact rail service across CSXT's Rail Corridor. *Id.* at ¶ 9. Thus, it is essential that CSXT maintain adequate capacity and flexibility to use, expand, or reconfigure the Collinwood Rail Yard to accommodate anticipated rail traffic increases along the Rail Corridor in the coming years. *Id.* at ¶ 8.

The Collinwood Rail Yard – and the Parcel that Plaintiff seeks to take in this lawsuit – is located in what is now a densely populated urban area of Cleveland, Ohio. Doc. 1-3 at 5, ¶ 11. If Plaintiff prevails, it will result in a portion of CSXT's Rail Yard being "carved off" and will limit CSXT's ability to meet its future rail needs by, among other things: (i) adding or expanding tracks; (ii) constructing additional rail support facilities; and (iii) offloading or storing products shipped by rail. *Id.* at ¶ 10. As a result, CSXT may be required to incur substantial capital investment to explore alternative locations (to the extent such locations exist and are suitable). *Id.* Simply put, the Parcel that Plaintiff seeks to adversely possess in this suit is critical to

CSXT's ability to use, expand, and/or reconfigure the vital Collinwood Rail Yard to handle projected future rail traffic.  *Id.* at 3-5, ¶ 6-11.

Given the importance of maintaining capacity and flexibility at the Collinwood Rail Yard, CSXT refused to sell the Parcel to Plaintiff.  Doc. 1-2 at 3, ¶ 7; Doc. 1-3 at 5, ¶ 10.  Indeed, CSXT's rail transportation and operation personnel considered Plaintiff's request to purchase the Parcel, and expressly rejected it upon finding that the Parcel is necessary for CSXT's future anticipated rail transportation uses.  Doc. 1-2 at 3, ¶ 7.

## IV.    LAW AND ARGUMENT

This Court has both federal question and diversity jurisdiction in this case because: (i) ICCTA completely preempts Plaintiff's state law claim to adversely possess the Parcel; and (ii) Plaintiff and CSXT are citizens of different states and the amount in controversy exceeds $75,000.  Accordingly, this Court should deny Plaintiff's Motion.

### A.    Plaintiff's Adverse Possession Claim Is Wholly Displaced By ICCTA

The jurisdictional doctrine of complete preemption provides a "corollary" to the well-pleaded complaint rule.  *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *see also Ritchie v. Williams*, 395 F.3d 283, 287 (6th Cir. 2005).  Under this corollary, a plaintiff cannot avoid the true federal nature of its claims simply by recasting them as state law causes of action.  *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-8 (2003); *cf. Brobander v. Unum Life Ins. Co. of Am.*, 2007 U.S. Dist. LEXIS 7045, at * 4 (N.D. Ohio Jan. 31, 2007).  Complete preemption exists where, as here, Congress intends a federal statute such as ICCTA to "wholly displace" state law claims.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004); *see also Kitzmann v. Local 619-M Graphic Communs. Conf. of the Int'l Bhd. of Teamsters*, 415 Fed. Appx. 714, 717 (6th Cir. 2011).

As the Fifth Circuit Court of Appeals has repeatedly recognized, ICCTA "wholly displaces" state law claims that seek to regulate, i.e., "manage" or "govern," rail transportation, and thus provides a basis for removal under the complete preemption doctrine. *See, e.g., Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (ICCTA "so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all."); *see also PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 540 (5th Cir. 2005) (ICCTA completely preempts state law actions that "fall squarely" under ICCTA); *cf. Fayard v. Northeast Vehicles Servs., LLC*, 533 F.3d 42, 47-48 (1st Cir. 2008) ("[S]ome state law claims may be completely preempted under the ICCTA . . . .").[3]

Numerous district courts have also upheld removal based upon ICCTA. *See, e.g., Harris Cnty. v. Union Pac. R.R. Co.*, 807 F. Supp. 2d 624, 632 (S.D. Tex. 2011); *Canadian Nat'l Ry. Co. v. Montreal, Me. & Atl. Ry.*, 750 F. Supp. 2d 189, 196 (D. Me. 2010); *South Dakota R.R. Auth. v. Burlington Northern & Santa Fe Ry. Co.*, 280 F. Supp. 2d 919, 937 (D.S.D. 2003); *Cedarapids, Inc. v. Chicago, Cent. & Pacific R.R.*, 265 F. Supp. 2d 1005, 1014-15 (N.D. Iowa 2003); *cf. Columbiana County Port Auth. v. Boardman Twp. Park Dist.*, 2001 U.S. Dist. LEXIS 16032, at * 6 (N.D. Ohio June 20, 2001) (finding federal question jurisdiction under ICCTA over suit involving attempt to condemn railroad property).[3]

---

[3] Although the Sixth Circuit recently cited *Elam* in a decision analyzing complete preemption removal based upon the Federal Railway Safety Act, the Sixth Circuit has not yet addressed whether ICCTA can provide the basis for complete preemption. *See Hampton v. R.J. Corman R.R. Switching Co. LLC*, 683 F.3d 708, n. 8 (6th Cir. 2012).
[3] This Court has considered ICCTA complete preemption in two inapposite situations. In 2006, this Court held that ICCTA did not completely preempt a claim for breach of an easement contract. *Allied Erecting & Dismantling Co. v. Ohio Cent. R.R., Inc.*, No. 4:06cv509, 2006 U.S. Dist. LEXIS 76542, at *15 (N.D. Ohio Oct. 11, 2006). However, this case involved a **voluntary** contract entered into by a rail carrier. *Id.* at *12-13. Similarly, in 2010, this Court found that ICCTA did not completely preempt a trespass claim arising from the railroad's **voluntary** sale of two parcels. *Allied Indus. Dev. Corp. v. Ohio Cent. R.R.*, No. 4:09-cv-01904, 2010 U.S. Dist. LEXIS 23994, at *10-11 (N.D. Ohio Mar. 15, 2010). Again, this case involved a voluntary contract entered into by the railroad. *Id.* at *10-11. "Voluntary agreements 'do not fall into the code of economic regulation that the ICCTA was intended to preempt.'" *Elam*, 635 F.3d at 806 (quoting *PCS Phosphate Co., Inc. v. Norfolk S. Corp.*, 559 F.3d 212, 219 (4th Cir. 2009)). In stark contrast, there is no voluntary contract here; Plaintiff seeks to take CSXT's Parcel.

In its Motion, Plaintiff does <u>not</u> dispute that complete preemption under ICCTA can provide the basis for removal to federal court.  *See Motion* at 2-7 (*citing Elam*, 635 F.3d 796).  Instead, it contends only that ICCTA does not preempt the state law adverse possession claim it brings here.  *Motion* at 7-8.  Specifically, Plaintiff argues that:  (i) state law property claims only have an "incidental" effect on rail transportation, and thus are not completely preempted by ICCTA; and (ii) even if ICCTA does preempt certain state law property claims, it does not do so here because the Parcel is not currently used by CSXT for rail transportation purposes.  *See Motion* at 7-8.  Both arguments fail as a matter of law.

As the overwhelming weight of controlling federal and STB authority demonstrates, ICCTA expressly and completely preempts Plaintiff's attempt to unilaterally and permanently deprive CSXT of its ability to use the Parcel through its adverse possession claim.  And ICCTA preemption applies even where property is not currently used for rail purposes, and even when "there are currently no specific plans" to develop the property.  *Jie, Ao*, 2012 STB LEXIS 206, at * 17.  By seeking to permanently deprive CSXT of its ability to use, expand or reconfigure its essential Collinwood Rail Yard, Plaintiff's adverse possession claim "directly attempts to manage or govern" CSXT's rail transportation decisions.   *See Elam*, 635 F.3d at 807.  Accordingly, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

### B.     The Broad Scope Of ICCTA's Express Preemption Provision

As a threshold matter, Plaintiff's arguments largely ignore ICCTA's broad express preemption provision, which grants the STB ***exclusive jurisdiction*** over rail transportation, rail carriers, and rail facilities like the Collinwood Rail Yard here, and expressly preempts state law with respect to regulation of rail transportation.  *See* 49 U.S.C. §§ 10501(b); § 10102(9)(a).  Specifically, ICCTA provides the STB with "*exclusive*" jurisdiction over:

(1)  *transportation by rail carriers*, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2)  *the* construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

b) (emphasis added).  Moreover, ICCTA expressly provides that "the remedies provided under [ICCTA] with respect to regulation of rail transportation are exclusive and ***preempt the remedies provided under Federal or State law.***" *Id.* (emphasis added).

ICCTA defines "transportation" to include a "warehouse, wharf, dock, ***yard, property***, [or] facility . . . of any kind related to the movement of passengers or property, or both, by rail . . . ." 49 U.S.C. § 10102(9)(a) (emphasis added).  This includes Collinwood Rail Yard.

ICCTA preemption extends to "all state laws that may reasonably be said to have the effect of 'managing' or 'governing' rail transportation." *Adrian & Blissfield R.R. Co. v. Vill. of Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008) (citation omitted); *see also Elam*, 635 F.3d at 805.  Indeed, "it is manifestly clear that Congress intended to preempt the Ohio state [laws] . . . to the extent that they intrude upon the STB's exclusive jurisdiction over 'transportation by rail carriers.'" *R.R. Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523, 561 (6th Cir. 2002).  Numerous courts have recognized the breadth of ICCTA preemption, noting that "[i]t is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *Norfolk S. Ry. Co. v. City of Maple Heights*, 2003 U.S. Dist. LEXIS 28282, at * 8 (N.D. Ohio May 14, 2003) (citation omitted); *see also Columbiana County Port Auth. v. Boardman Twp. Park Dist.*, 154 F. Supp. 2d 1165, 1180 (N.D. Ohio 2001) (ICCTA is one of "the most pervasive and comprehensive of federal regulatory schemes.").

9

## C. ICCTA Preempts Plaintiff's State Law Adverse Possession Claim That Seeks To Manage Or Govern CSXT Rail Transportation Activities and Facilities

Plaintiff's primary argument to avoid ICCTA preemption is that its state law property claim only has an "incidental" effect on rail transportation – i.e. the claim does not seek to "manage" or "govern" rail transportation. *See* Motion at 7. Plaintiff is simply incorrect.

Contrary to Plaintiff's assertions, the undisputed evidence shows that its proposed taking would constitute the impermissible regulation of CSXT's rail operations by depriving CSXT of the future use of its vital railroad property. As Plaintiff concedes, it seeks to take title to the CSXT Parcel outright. Doc. 1-1. This type of state law claim presents "the most extreme type of control" over rail transportation and rail property, and is thus preempted by ICCTA. *Columbiana County Port Auth.*, 154 F. Supp. 2d at 1181 (citation omitted); *see also Soo Line R.R. Co. v. City of St. Paul*, 827 F. Supp. 2d 1017, 1019 (D. Minn. 2010) (condemnation claims are expressly preempted by ICCTA). As a matter of law, Plaintiff "is impermissibly attempting to subject to state law property that Congress specifically put out of reach." *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013-14 (W.D. Wis. 2000).

And as noted in CSXT's Notice, it is well-settled that state law condemnation or adverse possession claims fall within ICCTA's broad preemptive scope. *See Union Pac. R.R. v. Chicago Transit Auth.*, 647 F.3d 675 (7th Cir. 2011); *City of Lincoln – Petition for Declaratory Order*, STB Fin. Dkt. No. 34425, 2004 STB LEXIS 508 (Aug. 12, 2004), *aff'd*, *City of Lincoln v. STB*, 414 F.3d 858 (8th Cir. 2005); *Harris Cnty. v. Union Pac. R.R. Co.*, 807 F. Supp. 2d at 632; *Buffalo S. R.R. Inc. v. Village of Croton-on-Hudson*, 434 F. Supp. 2d 241 (S.D.N.Y. 2006); *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013-1014 (W.D. Wis. 2000); *see also Jie Ao and Xin Zhou – Pet. for Decl. Order*, STB Fin. Docket No. FD 35539, 2012 STB LEXIS 206 (June 4, 2012); *Norfolk Southern Railway Co. – Pet. for Decl. Order*, STB Fin. Dkt.

No. 35196, 2010 STB LEXIS 635 (STB 2010).[4]  Plaintiff's Motion does not acknowledge these authorities, much less attempt to distinguish them.

These decisions also make an important distinction.  On one hand, ICCTA preempts adverse possession claims because they take railroad property outright, thus preventing existing rail use and future development.  On the other hand, ICCTA does not necessarily preempt non-exclusive rail crossing easement claims because those claims allow the railroad to retain and use the property for railroad purposes.  *See Union Pac. R.R.*, 647 F.3d at 682, n. 9 (noting that "non-exclusive easements across railroad property such as road crossings and utility easements" are not typically preempted); *Jie Ao*, 2012 STB LEXIS 206, at * 17 (same). This distinction does not help Plaintiff, however.  Its adverse possession claim is anything but the kind of routine, non-conflicting use that might avoid express preemption under ICCTA.  Rather, by seeking to wholly deprive CSXT of its ability to use the Parcel, Plaintiff's adverse possession claim presents a quintessential example of state law regulation preempted by ICCTA.

Plaintiff's Motion ignores all of this controlling authority.  In fact, Plaintiff goes so far as to suggest that ICCTA *never* preempts state law property claims.  *Motion* at 7.  In support, Plaintiff takes a quote from *Elam* wholly out of context for the proposition that all claims arising out of state property law necessarily only have an "incidental" effect on rail transportation.  *See id.* ("[L]ike state property laws . . . the effects of state negligence laws on rail operations are merely incidental.") (*citing Elam*, 635 F.3d at 813)).  Plaintiff could not be more wrong.  In fact, *Elam* fully supports complete preemption here, as it expressly held that state law claims that

---

[4] As such, Plaintiff's attempt to distinguish *Elam* as involving a state *statute* – rather than state common law – is unavailing.  *See Motion* at 8.  ICCTA preempts state law "regulation" - it does not distinguish between statutory and common law claims.  49 U.S.C. § 10501(b).  Federal and state courts have consistently held that state common law condemnation and adverse possession claims constitute the "regulation" of rail transportation which is expressly preempted by ICCTA.  *See Union Pac. R.R.*, 647 F.3d at 679 ("Condemnation can be a form of regulation . . . ."); *see also e.g., Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 840 (E.D. Ky. 2004), *aff'd*, Case No. 04-5448 (6th Cir. Feb. 7, 2005) (Federal courts "have consistently held that the ICCTA preempts state common law claims with respect to railroad operations.").

"manage" or "govern" rail transportation are completely preempted. *Elam*, 635 F.3d at 807. And, as the above authorities demonstrate, Plaintiff's adverse possession claim constitutes impermissible state law regulation "managing" or "governing" CSXT's rail operations. *See, e.g., Soo Line R.R.*, 827 F. Supp. 2d at 1022 ("[C]ondemnation is regulation.") (citation omitted)

*Elam* is entirely consistent with these authorities. The quote from *Elam* cites *Franks Inv. Co. v. Union Pac. R.R.*, 593 F.3d 404, 414 (5th Cir. 2010) – a routine crossing dispute case that applied straightforward STB authority in concluding that crossing easements are not categorically preempted by ICCTA. All of the cases holding that ICCTA preempts adverse possession claims like Plaintiff's also acknowledge that crossing easements are typically not preempted. *See, e.g., Union Pac. R.R.*, 647 F.3d at 682, n. 9; *see also Jie Ao*, 2012 STB LEXIS 206, at * 17. Indeed, *Franks*, *Union Pacific*, and *Jie Ao* all cite the same STB authority for this point.[5] But this lawsuit does not involve a routine grade crossing dispute. Rather, it is undisputed that Plaintiff seeks to adversely possess part of CSXT's Collinwood Rail Yard.[6] As such, Plaintiff's reliance on the out of context quote from *Elam* is unavailing.

### D. CSXT's Ability To Use The Parcel For Its Future Rail Transportation Needs Is Subject To ICCTA Preemption

Plaintiff next weakly attempts to avoid ICCTA preemption by claiming that CSXT does not currently use the Parcel for rail transportation purposes. *Motion* at 8. Without any support, Plaintiff claims that CSXT's future use of the CSXT Parcel does not justify ICCTA preemption. *See id.* Again, Plaintiff is simply wrong as a matter of settled law.

---

[5] *Compare Franks*, 593 F.3d at 407, 414 (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 333 (5th Cir. 2008), which in turn cites *Maumee & W. R.R. Corp. and RMW Ventures, LLC-Petition for Declaratory Order*, STB Finance Docket No. 34354, 2004, STB LEXIS 140 (S.T.B. March 2, 2004)) *with Jie Ao*, 2012 STB LEXIS 206, at * 14-15 (citing *Maumee*) and *Union Pac.*, 647 F.3d at 680 (citing *Mamuee*).

[6] Similarly, in *Adrian v. Blissfield*, the Sixth Circuit applied the STB's approach to ICCTA preemption in finding that "routine crossing disputes" are not typically preempted by ICCTA. 550 F.3d at 539. Under that same formulation, the STB has clearly stated that adverse possession claims virtually identical to Plaintiff's are preempted. *Jie Ao*, 2012 STB LEXIS 206, at * 14-15. As such, *Adrian* further supports preemption here.

It is undisputed that the Parcel is part of CSXT's active and operating Collinwood Rail Yard. Doc. 1-2 at 4, ¶ 5. Rail yards by statutory definition involve "rail transportation" activities. *See Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 159 (4th Cir. 2010); *see also Joint Pet. for Decl. Order – Boston & Maine Corp. & Town of Ayer, MA*, Fin. Dkt. No. 33971, 2001 STB LEXIS 435, at * 17 (Apr. 30, 2001).[7]

Potential future rail uses are also entirely relevant to the ICCTA preemption analysis. *See e.g.*, *Jie Ao*, 2012 STB LEXIS 206, at * 17 (The "fact that . . . there are currently no specific plans to reactivate this property, does not mean that the property is not within the [STB's] jurisdiction") (collecting cases); *Norfolk Southern*, 2010 STB LEXIS 635, at * 10-11 ("The fact that NS is not now actively operating trains on the Property does not mean that the property is not now, or may not later be, needed for railroad purposes."); *cf. City of Creede –Pet. for Dec. Order*, STB Fin. Dkt. No. 34376, 2005 STB LEXIS 486, at * 15 (May 3, 2005) ("[I]t cannot be said that property at the edge of a railroad's [operations] is 'not needed for railroad transportation' just because tracks or facilities are not physically located there now.").

Simply put, ICCTA preempts adverse possession claims even when the property is not currently used for rail purposes. *Jie Ao*, 2012 STB LEXIS 206, at * 17. All that is required is that railroad reasonably believe the property to be necessary for its future rail transportation needs. *See id*; *see also, e.g.*, *City of Lincoln* 414 F.3d at 862 (in the context of considering whether an eminent domain action is preempted under the ICCTA, it is permissible to consider "a railway's future plans as well as its current uses . . ."); *Norfolk So.*, 2010 STB LEXIS 635, at * 11, n. 8 ("[T]he [STB's] practice is to consider both current and future transportation plans in determining whether a railroad has proposed a bona fide rail operation.") (collecting cases). In

---

[7] Thus, Plaintiff's claim that the property is not "related to the movement of passengers or property or both" is simply wrong. *Motion* at 8. The Parcel property is part and parcel of CSXT's Collinwood Rail Yard and thus is "related to" the movement of freight even if every inch of the Parcel is not currently used for rail transportation.

*Union Pacific*, for example, a claim to condemn property that a railroad was not using, and had no immediate plans to use, was preempted simply because a taking would "prevent [the railroad] from using it for railroad transportation in the future."  647 F.3d at 681.

These STB and court decisions recognize the common sense proposition that, although difficult to predict with certainty, railroad facilities often require upgrades and expansions to accommodate increased rail traffic.  *See City of Lincoln*, 414 F.3d at 862 ("Condemnation is a permanent action, and 'it can never be stated with certainty at what time any particular part of a right of way may become necessary for railroad uses.'") (internal citation omitted); *see also Norfolk So.*, 2010 STB LEXIS 635, at * 11 (same) (citing *City of Lincoln*).

As the uncontroverted evidence demonstrates, the Parcel is essential to CSXT's ability to use, expand, and/or reconfigure its Collinwood Rail Yard to meet anticipated future rail demands.  Doc. 1-3 at 5, ¶ 11.  Whether CSXT uses the entire Parcel for rail transportation purposes today is thus irrelevant to the ICCTA preemption analysis.[8]

**E.**    **The STB's Recent Decision In *Jie Ao* Demonstrates That Plaintiff's Adverse Possession Claim Is Completely Preempted By ICCTA**

The STB's recent decision in *Jie Ao* is instructive and persuasive.  2012 STB LEXIS 206. In *Jie Ao*, the STB was faced with claims virtually identical to those asserted here.  Specifically, the *Jie Ao* plaintiff sought to adversely possess property adjacent to a railroad right of way that had been donated to a local town for use as a recreational trail.  *Id.* at * 2-7.  According to the plaintiff, ICCTA preemption did not apply because the property had "never been used for rail operations."  *See id.* at 19, n. 8.  The STB rejected this argument, holding that "state adverse

---

[8] Similarly, Plaintiff's unsupported claim that a portion of the Parcel to be taken property is "behind a fence" and has not been used by CSXT employees "in decades" ignores CSXT's current ownership and future railroad operations, and thus fails.  *Motion* at 8.  The STB rejected a virtually identical argument in *Jie Ao*, concluding that although the property housed petitioner's retaining wall, garage, and drive way, and had "never been used for rail operations," those facts were irrelevant given the railroad's future plans for growth. *See id.* at 19, n. 8.

14

possession law would unreasonably interfere with potential *future* railroad operations," including the ability "to handle possible *future* traffic growth."  *Id.* at * 16 (emphasis added).  Because the plaintiff's adverse possession claim fundamentally deprived the railroad's ability to use its property in the future, ICCTA preemption applied.  *See id.* at * 14, n. 4 ("Adverse possession has the same legal effect on the property as condemnation – elimination of the prior ownership interest in the property.").

Importantly, the STB held that ICCTA preempted the adverse possession claim even though there were "currently no specific plans" to use the property for rail uses:

> [A]ssuming arguendo, that Ao-Zhou is correct that the application of state adverse possession law here might have little actual, practical effect on current plans for active railroad operations, circumstances can change. Ao-Zhou's approach to preemption would permit landowners to carve off strips of railroad ROW all over the country for non-rail use, even though the [STB] has not authorized the ROW to be permanently removed from the nation's rail system under Title 49. That untenable result would undermine interstate commerce and the strong federal policy in favor of retaining rail property in the national rail network, where possible. See 49 U.S.C. §§ 10904, 10907 and 16 U.S.C. § 1247(d).

*Id.* at * 17.  The same result is warranted here.

The Collinwood Rail Yard is landlocked in a densely populated and urban area of Cleveland, Ohio.  Doc. 1-3 at 5, ¶ 11.  Thus, there is no readily available property for future railroad expansion and CSXT needs to retain the ownership and control of the Parcel for future railroad operations.  *Id.*[9]  In fact, it is undisputed that CSXT refused to sell the Parcel to Plaintiff because CSXT needed the Parcel for the "current and anticipated future uses of the Collinwood Rail Yard."  Doc. 1-2 at 3, ¶ 7.  As in *Jie Ao*, the permanent taking of the CSXT Parcel would directly limit or reduce CSXT's future railroad operations at Collinwood Rail Yard, including but not limited to, by restricting CSXT's ability to add or reconfigure tracks on or in the vicinity

---

[9] Plaintiff's conclusory affidavit does not change that result, as Plaintiff cannot possibly have personal knowledge of CSXT's future rail needs.  *See* Doc. 5 at 12 (claiming without support that the lawsuit will not "affect the operations of CSX Transportation currently or in the future.").

15

of the Parcel and/or to use the CSXT Parcel for offloading and storage of products shipped by rail.  D.E. 1-3, at 5, ¶ 10.

Indeed, this case presents even stronger ICCTA preemption grounds than those in *Jie Ao*. There, the entire property at issue had been donated for use as a trail – with no current rail purpose or activity.  In stark contrast, the Parcel is part of the active and operating Collinwood Rail Yard, and it is well-settled that rail yards constitute "transportation" subject to ICCTA preemption.  Doc. 1-2 at 3, ¶ 5; *see also* cases cited *supra*.  Simply put, Plaintiff cannot avoid ICCTA preemption and so its Motion should be denied.[10]

### F.     This Court Also Has Diversity Jurisdiction

Alternatively, even if ICCTA did not completely preempt Plaintiff's claims, this Court also has diversity jurisdiction under 28 U.S.C. § 1332.  Plaintiff does not dispute that the parties are completely diverse.[11]  Rather, Plaintiff only asserts that the amount in controversy is less than $75,000.  *Motion* at 9.  In support, Plaintiff points to and attaches an e-mail in which a CSX Real Property sales employee simply states that the "market value" of the Parcel is approximately $20,000-$28,000.00.  *See Motion* at 9, 15.  Per CSXT's customary procedure, however, CSX Real Property sales employees only field the inquiries to purchase CSXT property.  Doc. 1-2 at 3, ¶ 7.  All such requests to purchase CSXT property must then be reviewed and approved by CSXT's rail transportation and operations personnel.  *Id.*  In this case, those personnel rejected Plaintiff's offer to purchase the Parcel after concluding the Parcel is necessary for the "current

---

[10] If this Court declines to apply ICCTA preemption, then at a minimum, it should refer Plaintiff's suit to the STB rather than to state court.  *See Wilson v. Ill. Cent. R.R.*, 2009 U.S. Dist. LEXIS 69266, at *8-9 (S.D. Miss. Aug. 7, 2009) (noting that courts can deny motions to remand and instead refer to STB, which has concurrent jurisdiction); *see also Norfolk Southern Railway Co.*, STB Fin. Dkt. No. 35196, 2010 STB LEXIS 635, at * 7 (STB 2010) (noting that Alabama federal district court referred suit to STB rather than decide motion to remand to state court).

[11] As CSXT demonstrated in its Notice (Doc. 1, at 9, ¶ 21, 22), CSXT is a citizen of both Virginia and Florida, and Plaintiff (upon information and belief) is a citizen of Ohio. These allegations are sufficient to establish complete diversity.  *See Norton v. Kent*, 2009 U.S. Dist. LEXIS 90119, at * 4 (N.D. Ohio Sept. 17, 2009).

16

and anticipated future uses of the Collinwood Rail Yard." *Id.* Accordingly, the Parcel's value as part of the Collinwood Rail Yard is far greater than its "market value." Doc. 1-3 at 5, ¶ 11.

Regardless, Plaintiff misses the mark because the amount in controversy in quiet title actions is not limited to the fair market value of the property. *David A. Waldron & Assocs. v. Loon, LLC*, 2012 U.S. Dist. LEXIS 63669, at *10-11 (N.D. Ohio Apr. 17, 2012) (in a quiet title suit, courts "do not look merely at the damages or relief to be awarded; they also consider the practical, economic effects of the outcome of the case."); *see also Conley v. Whirlpool Corp.*, 2011 U.S. Dist. LEXIS 20629, at *9-10 (E.D. Tenn. Mar. 1, 2011). To the contrary, CSXT need only show it more likely than not that its future "anticipated loss" from the taking will exceed $75,000. *Northup Props., v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 770 (6th Cir. 2009).

In making this determination, courts may consider the amount in controversy from either the plaintiff's or the defendant's viewpoint. *See, e.g., Conley*, 2011 U.S. Dist. LEXIS 20629, at *9-10 (choosing to "assess Plaintiffs' instant Motion to Remand from Defendant's viewpoint" for amount in controversy purposes) (*citing Northrup*); *see also Columbia Gas Transmission Corp. v. Meadow Preserve York, LLC*, 2006 U.S. Dist. LEXIS 30645, at * 6 (N.D. Ohio May 17, 2006); *Crosby v. America Online, Inc.*, 967 F. Supp. 257, 264 (N.D. Ohio 1997).[12] In other words, for amount in controversy purposes, this Court can consider the potential loss of the property and negative impact on CSXT's future railroad operations if Plaintiff prevails in this suit. *See Vulcan Lands, Inc. v. Chi. Title & Trust Co.*, 2008 U.S. Dist. LEXIS 39107 (N.D. Ill. May 13, 2008) (because evidence demonstrated that easement would decrease value of land by over $5,000,000, amount in controversy was met, despite fact that market value of land to be

---

[12] Although the Sixth Circuit has not expressly adopted the "either viewpoint" test, it routinely evaluates the amount in controversy from the defendant's viewpoint. *See, e.g., Northup Properties, Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 770, n. 1 (6th Cir. 2009); *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006).

condemned was less than $75,000.); *see also Conley*, 2011 U.S. Dist. LEXIS 20629, at *9-10; *Bergstrom v. Burlington N. R.R.*, 895 F. Supp. 257 (D.N.D. 1995).

The recent district court decision in *Conley v. Whirlpool* is directly analogous.  2011 U.S. Dist. LEXIS 20629.  There, the plaintiff sought to quiet title on a disputed strip of land located between the parties' respective properties.  *Id.* at * 2.  After the defendant removed the case, the plaintiff moved to remand, arguing that the fair market value of the small strip of land was well below $75,000.  *Id.* at * 3.  The defendant submitted affidavits stating that the value of its property would diminish by $100,000 without the strip of land, as the strip was used for accessing the defendant's property.  *Id.* at *3-4.  Alternatively, the defendant would be forced to spend over $75,000 constructing alternative access routes.  *Id.*  Applying the Sixth Circuit's decision in *Northrup*, the Court found that this evidence was sufficient and thus denied plaintiff's motion to remand.  *Id.* at * 12-15.  The same result is mandated here.

Based on his more than 30 years of experience in the railroad industry, CSXT's Director of Network Planning Larry Ratcliffe has determined that if Plaintiff is permitted to "carve off" part of the Collinwood Rail Yard, the potential loss and impact on CSXT's future railroad operations would "far exceed $75,000."  Doc. 1-3 at 5, ¶ 11.  As Mr. Ratcliffe explains, losing the CSXT Parcel would directly limit or reduce CSXT's future ability and operational flexibility to efficiently conduct railroad operations at Collinwood Rail Yard.  *Id.* at ¶ 10.  Such negative impacts would include precluding CSXT's ability to add or expand tracks, to construct additional rail support facilities, and to offload or store products shipped by rail.  *Id.*  Because Collinwood Rail Yard is a key component of CXST's Rail Corridor, these restrictions on CSXT's use of the Yard would restrict CSXT's ability to provide efficient rail service throughout its rail network.

18

*See id.* at 4, ¶ 9.  In addition, CSXT would be forced to incur substantial capital investment to explore alternative locations (to the extent such locations exist and are suitable).  *Id.* at 5, ¶ 11.

CSXT's uncontroverted evidence is sufficient to satisfy the amount in controversy requirement.  Accordingly, Plaintiff's Motion should be denied.

## V.      CONCLUSION

For the foregoing reasons and authorities and those set forth in its Notice of Removal (Doc. 1), Defendant CSX Transportation, Inc. respectfully requests that Plaintiff's Motion to Remand (Doc. 5) be denied in its entirety.

Respectfully submitted this 13th day of August, 2012.

JONES DAY

By:      s/Robert E. Haffke
        Jeffery D. Ubersax
        Ohio Bar No. 0039474
        Robert E. Haffke
        Ohio Bar No. 0082451
        901 Lakeside Avenue
        Cleveland, Ohio 44114
        (216) 586-7112
        (216) 579-0212 (fax)

        *Of Counsel:*
        McGUIREWOODS LLP
        R. Eric Bilik
        Emily Y. Rottmann
        50 N. Laura Street, Suite 3300
        Jacksonville, Florida 32202
        (904) 798-3200
        (904) 798-3207 (fax)

        *Attorneys for Defendant CSX*
        *Transportation, Inc.*

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Rule 7.1(f) of the Local Civil Rules for the Northern District of Ohio, the undersigned hereby certifies that upon review of the docket, this case has not been assigned to any track. The undersigned further certifies that this Response in Opposition to Plaintiff's Motion for Remand and Memorandum in Support adheres to the page limitations set forth in Rule 7.1(f).

/s/ Robert E. Haffke
Robert E. Haffke
One of the Attorneys for Defendant
CSX Transportation, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

David J. Horvath, Esq.
7100 E. Pleasant Valley Road, Suite 110
Independence, Ohio 44131
(216) 986-0860
djhorvath@hotmail.com

/s/ Robert E. Haffke
Robert E. Haffke
One of the Attorneys for Defendant
CSX Transportation, Inc.

41293609_7