UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **14500 LIMITED** ) | **CASE NO.1:12CV1810** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| Vs. ) | |
| ) | |
| **CSX TRANSPORTATION, INC.,** ) | **OPINION AND ORDER** |
| ) | |
| Defendant. ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff 14500 Limited's Motion to Remand (ECF # 5). For the following reasons, the Court denies Plaintiff's Motion.

The facts of this case are largely not in dispute. Plaintiff is a trucking company with property located in the city of Cleveland, Ohio. Defendant CSX Transportation, Inc. ("CSX") owns the Collinwood Railyard whose property abuts Plaintiff's. Plaintiff contends that the previous owner of its property and subsequently Plaintiff thereafter, have encroached on Defendant's property to the point of erecting a fence around a portion of Defendant's property. As a result, Plaintiff and its predecessors have excluded Defendant from the property for more

1

than twenty-one years.  In June 2012, Plaintiff filed an action in state court to quiet title due to adverse possession and for prescriptive easement.  Plaintiff alleges that the adversely possessed property is necessary for it to maintain its operation.

On July 13, 2012, Defendant removed the case to this Court alleging complete federal preemption under Section 10501(b) of the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101 *et seq*. and, alternatively, under 28 U.S.C. §1332 due to the diversity of the parties.  According to Defendant, this parcel is necessary for its present and future operation of the railyard.  In fact, Defendant contends the parties entered into preliminary discussions for the sale of the disputed property but Defendant ultimately determined the property was essential to its future expansion.

At issue before the Court is whether the ICCTA completely preempts Plaintiff's claims to quiet title based on adverse possession and prescriptive easement under state law.

## **LAW AND ANALYSIS**

### **Standard of Review**

28 U.S.C. § 1441 "provides that an action is removable only if it could have initially been brought in federal court."  *Cole v. Great Atl. & Pacific Tea Co.*, 728 F.Supp. 1305, 1307 (E.D.Ky.1990).  Put another way, "[a] civil case that is filed in state court may be removed by the defendant to federal district court if the plaintiff could have chosen to file there originally." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1059 (6th Cir.2008).  The burden of establishing federal jurisdiction rests upon the removing party, i.e., the defendant.  *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994).  "Concern about encroaching on a state court's right to decide cases properly before it, requires this court to construe removal

jurisdiction narrowly." *Cole*, 728 F.Supp. at 1307 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941)). A removed case ***must*** be remanded if the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). In addition, "[w]here there is doubt as to federal jurisdiction, the doubt should be construed in favor of remanding the case to the State court where there is no doubt as to its jurisdiction." *Walsh v. Am. Airlines, Inc.*, 264 F.Supp. 514, 515 (E.D.Ky.1967); see also *Breymann v. Pennsylvania, O. & D. R.R.*, 38 F.2d 209, 212 (6th Cir.1930).

Federal district courts are courts of limited jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137 (1803)). "Subject matter jurisdiction is the unwaivable *sine qua non* for exercise of the federal judicial power." *Crabtree v. Wal-Mart*, 2006 WL 897210 at *1 (E.D.Ky. Apr. 4, 2006), slip copy; *Richmond v. Int'l Bus. Machs. Corp.*, 919 F.Supp. 107 (E.D.N.Y. 1996) (citing Fed.R.Civ.P. 12(b)(1)). Want of subject matter jurisdiction may be raised at any time by the parties or by the Court on its own initiative. Fed.R.Civ.P. 12(b)(1) and 12(h)(3); *Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939). "[D]efects in subject matter jurisdiction cannot be waived by the parties and may be addressed by a court on its own motion at any stage of the proceedings." *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir.2006) (citing *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir.1988)).

In the absence of diversity, a civil action filed in state court may be removed to federal court only if the claim "arises under" federal law. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be

3

removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). "Since a defendant may remove a case only if the claim could have been brought in federal court, . . . the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

However, an exception to the "well-pleaded complaint" rule is the "complete preemption" doctrine. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 399 (1987) "[A]ny claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393. Because CSX is the party seeking removal, and since the face of Limited's well-pleaded Complaint does not state a federal claim, CSX carries the burden of establishing Limited's cause of action is completely preempted. *See Valinski v. Detroit Edison*, 197 Fed. Appx. 403, 2006 WL 2220979 at *12 (6th Cir., Aug. 4, 2006).

**ICCTA and Complete Preemption**

The ICCTA, 49 U.S.C. § 10101 *et seq.* was implemented by Congress to regulate railroads and broaden the express preemption of the Interstate Commerce Act. It created the Surface Transportation Board and conferred upon it exclusive jurisdiction over certain interstate railroad activity as outlined in 49 U.S.C. § 10101, including: encouraging competitive rates, minimizing the need for federal regulatory control, requiring fair and expeditious regulatory decisions, promoting a safe and efficient railroad system and promoting public health and safety. The ICCTA defines "railroad" as: ..."(C) a switch, spur, track, terminal, terminal facility, and a freight depot, ***yard,*** and ground, used or necessary for transportation."(Emphasis added). It also

4

defines "transportation" to include: 9(A) "a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, **_yard,_** property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use." (Emphasis added).

>The ICCTA confers exclusive jurisdiction upon the STB over:
>
>(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
>(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).

"With the enactment of ICCTA, effective January 1, 1996, Congress codified an explicit preemption clause at 49 U.S.C. § 10501(b)(2), which provides that: 'Except as otherwise provided in this part, the remedies provided under this part with respect to the regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.'" *Columbiana County Port Authority v. Boardman Tp. Park Dist.* 154 F.Supp.2d 1165, 1180 (N.D.Ohio, 2001).

The Sixth Circuit has held that the ICCTA "preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Adrian & Blissfield R. Co. v. Village of Blissfield* 550 F.3d 533, 539 (6th Cir. 2008)(Citations

omitted.)

Defendant contends Plaintiff's state court actions for adverse possession and prescriptive easement are necessarily preempted by the ICCTA because taking the property of Defendant would deprive Defendant of the future use of its property. In opposing Plaintiff's Motion to Remand, Defendant offers the declaration of Lawrence L. Ratcliffe, Director of Network Planning for CSX. Mr. Ratcliffe declares that he is responsible for planning and analysis of Defendant's rail network, including its long-term rail network needs. According to Ratcliffe, the property in question is part of the Collinwood Railyard, located within the City of Cleveland. The Collinwood Railyard is an integral part of the Rail Corridor which is CSX's main rail corridor running between Chicago, Illinois and St. Louis Missouri on one side and Buffalo, New York; New England; and New York City on the other. The line runs through Cleveland and is one of the densest rail corridors in the eastern United States, according to Ratcliffe. Ratcliffe asserts that the Collinwood Railyard is of crucial importance because it is centrally located, serves as a mechanical inspection point and acts as an exchange center for traffic. Several trains each day originate and terminate at the Collinwood Railyard.

Ratcliffe further declares that traffic through the Collinwood Railyard has increased in recent years and CSX projects significant growth in traffic through the Rail Corridor. Therefore, Ratcliffe states it is critical that the Collinwood Railyard maintain sufficient flexibility to expand or reconfigure its operations to accommodate the increased traffic. Ratcliffe declares that rail service would be impacted negatively if the Collinwood Railyard lacks the ability to reconfigure. Because the Collinwood Railyard is located in a densely populated urban area that lacks available property nearby for expansion of rail road operations, Ratcliffe asserts that the loss of the

property at issue would have serious, negative consequences on rail transportation.

Plaintiff offers the affidavit of Neil Gloger, Managing Partner of Limited. He attests that the property at issue is not presently being used by Defendant, is not usable by Defendant in its present condition and bears no evidence of ever having been used for rail transportation. He attests that his possession of the property will not affect CSX's operations now or in the future.

Upon consideration of the parties' respective briefs, the Court holds that the ICCTA completely preempts Plaintiff's state law claims. Both a United States Circuit Court and the STB have concluded that attempts to take railroad property are preempted by the ICCTA.

In *Union Pacific R. Co. v. Chicago Transit Authority,* 647 F.3d 675 (7th Cir. 2011), the Seventh Circuit determined that even though property of a railroad was not currently being used for railroad transportation, a taking of the property would prevent the railroad from using it for future transportation use and such action was preempted by the ICCTA.

In *B & S Holdings LLC v. BNSF Railway Co.* No. 12CV387, 2012 WL 3966320 (E.D. Wash. Sept. 11, 2012), the district court determined "the ICCTA completely preempts this state law adverse possession cause of action because not only would it interfere with railroad operations, but would divest the railroad of the very property with which it conducts its operations."

Similarly, in a decision by the STB in *Jie Ao and Xin Zhou, Petition for Declaratory Order,* FD 35539, 2012 WL 2047726 (STB June 6, 2012), the Board determined the ICCTA completely preempted Petitioners' state adverse possession claims to ownership of property belonging to a railroad. The STB reached its conclusion based on its assessment that although the property at issue was not currently used by the railroad for transportation, "the record here

7

shows that transferring ownership of Parcel D would directly affect the amount and type of maintenance that could be performed on this railroad ROW (right of way), and limit future options for reactivation." *Id* at*7  The Board also based its decision on "the strong federal policy in favor of retaining rail property in the national rail network, where possible." *Id.*

This Court further holds that the STB's ruling in *Jie Ao* is entitled to deference under the standard set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–844, (1984).

> "The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.  (Internal citation omitted). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."

The Sixth Circuit has expressly stated "[w]hen faced with a problem of statutory construction, federal courts should show 'great deference to the interpretation given the statute by the officers or agency charged with its enforcement.'"*Herman v. Fabri-Centers of America, Inc.* 308 F.3d 580, 592 (6th Cir. 2002).  There is no dispute that the STB is granted exclusive jurisdiction over railroad transportation.  *Railroad Ventures, Inc. v. Surface Transp. Bd.* 299 F.3d 523, 530 (6th Cir. 2002) ("The STB is now the federal agency with exclusive jurisdiction over transportation by railroad.")  Congress intended to delegate to the STB decisions concerning railroad transportation.  At least one circuit court has determined that STB decisions are entitled

to *Chevron* deference. *Assoc. Of American Railroads v. South Coast Air Quality Management Dist.* 633 F.3d 1094, 1097 (9th Cir. 2010).

Based on the evidence and arguments before the Court, the Court finds that the ICCTA preempts Plaintiff's adverse possession claim because the evidence presented demonstrates that the taking of Defendant's property would affect railroad transportation in the future. The Court finds persuasive Defendant's representation that the property in question is needed to potentially accommodate future needs of the Collinwood Railyard due to increased traffic through the Rail Corridor therefore, the adverse possession claim would affect rail transportation. Given the Government's overarching interest in "retaining rail property in the rail network" and Defendant's own representations that it needs the flexibility afforded the property in question to meet future needs, the Court finds it affects railroad transportation and is preempted by the ICCTA.

**Diversity Jurisdiction**

Defendant also based its removal on diversity jurisdiction. In order to establish diversity jurisdiction under 28 U.S.C. § 1332(a)(1), there must be complete diversity of citizenship between the parties ***and*** an amount-in-controversy exceeding Seventy-Five Thousand Dollars ($75,000). The burden is on removing party "to show by a preponderance of the evidence that the allegations in the complaint at the time of removal satisfy the amount-in-controversy requirement." *Northup Properties, Inc. v. Chesapeake Appalachia, L.L.C.* 567 F.3d 767, 769 - 770 (6th Cir. 2009)

The parties do not dispute they are diverse citizens as Plaintiff is an Ohio company while Defendant is a citizen of both Florida and Virginia. The parties dispute the amount-in-

9

controversy. Defendant contends the amount in controversy exceeds $75,000. In support, Defendant offers the declaration of Ratcliffe who states:

> 11. As the Collinwood Rail Yard is located in a densely populated and urban area of Cleveland, Ohio, there is no readily available property surrounding the Collinwood Rail Yard for future railroad operations. As such, the loss of the CSXT Parcel from the Collinwood Rail Yard would have a significant impact on CSXT's ability to conduct future railroad operations. Although the harm would be difficult to quantify, the potential loss and impact upon CSXT's future railroad operations would far exceed $75,000.

In response, Plaintiff offers the affidavit of Neil Gloger who attests that when he entered into discussions with CSX to purchase the property they assessed the value of the property at $20,000 - 28,000.00. He further attests the land in question is not usable by CSX for any future railroad endeavors. Finally, he attaches an email from Matt Coffing, a CSX Sales Associate who relays the above valuation of the property and offers to lease the land to Plaintiff for $1,800.00 a year.

The Court holds that Defendant has not met its burden to show by a preponderance of the evidence that the amount in controversy is met. Ratcliffe's declaration merely speculates, without support, that the potential loss and impact on CSX would exceed $75,000. This was contradicted by Plaintiff's evidence that another CSX representative placed a value below $30,000 on the property and offered to lease it to Plaintiff for $1800/yr. Therefore, there is no diversity jurisdiction.

This leads us to a final issue which the parties have not fully briefed. While the *Jie Ao* decision determined that a state law adverse possession claim is expressly preempted by the ICCTA, it also held that a state law prescriptive easement claim, like the one asserted in

Plaintiff's Complaint, is not preempted and may be heard by the state court.   While other courts and the STB agree that both have concurrent jurisdiction to determine preemption issues, See *Elam v. Kansas City Southern Railway Co.* 635 F.3d 796, 810 (5th Cir. 2011); *Jie Ao* at *3, it is less clear how a court should proceed upon a finding of preemption.  Courts have dismissed claims upon finding preemption when the STB has exclusive jurisdiction over the preempted claim.  See *B & S* at *6.  And courts have stayed the action and referred the claim to the STB.  Given the holding in *B & S* that Plaintiff's adverse possession claim falls under the exclusive jurisdiction of the STB, and the STB decision in *Jie Ao* finding that prescriptive easement claims are not preempted, the Court orders the parties to show cause why this action should not be dismissed without prejudice.  Parties shall submit cross briefs no later than April 12, 2013 on the above issues.  Briefs shall be limited to ten pages.

       Therefore, for the foregoing reasons, the Court denies Plaintiff's Motion to Remand.

  IT IS SO ORDERED.

                                      s/ Christopher A. Boyko  
                                      CHRISTOPHER A. BOYKO  
                                      United States District Judge

Dated:  March 14, 2013